UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANDREW SHAPIRA, 7th HEAVEN, LLC,      )
and FORTUNA BOURBON COMPANY,          )
LLC,                                  )
                                      )
          Plaintiffs,                 )
                                      )
v.                                    )   CIVIL ACTION NO. 3:23-cv-602-RGJ
                                      )
RARE CHARACTER WHISKEY CO., LLC,      )   *-Filed Electronically-*
PABLO MOIX, and PETER NEVENGLOSKY,    )
                                      )
          Defendants                  )
_____ )

## PLAINTIFFS' RESPONSE TO DEFENDANTS RARE CHARACTER WHISKEY, CO., LLC, PABLO MOIX, AND PETER NEVENGLOSKY'S MOTION TO DISMISS[1]

Plaintiffs Andrew Shapira, Fortuna Bourbon Company, LLC, and 7th Heaven, LLC (collectively "Plaintiffs") by counsel, request the Court DENY Defendants Rare Character Whiskey Co., LLC, ("Rare Character"), Pablo Moix ("Moix") and Peter Nevenglosky's ("Nevenglosky") Motion to Dismiss (collectively "Defendants").

## FACTUAL BACKGROUND

Plaintiffs' Complaint arises out of the creation of a joint venture between Plaintiffs and Defendants. Defendant Rare Character was formed in August 2020 with three members – Moix, Nevenglosky and George Ruan. Amended Complaint ("Amnd. Comp.") ¶¶ 9; 18. Moix and Nevenglosky, as managing members of Rare Character, envisioned an Exceptional Series of bourbon and whiskey products to be offered by Rare Character. Amnd. Comp., ¶¶ 26(j); 48. However, Rare Character could not distill its own bourbon

---

[1] Plaintiffs resubmit the Response to the Motion to Dismiss as filed (changing signature block and style) in the state court action on September 1, 2023 by Jennifer Barbour, Gray Ice Higdon, PLLC.

and whiskey to launch those lines quickly.  As such, Rare Character needed a business partner who could offer them access to distilled bourbon and whiskey.  At the same time, Moix and Shapira, who had known each other for several years, were discussing relaunching a defunct bourbon brand known as Fortuna Bourbon Whiskey.  Amnd. Comp. ¶ 20.  During those discussions, Moix learned Shapira had connections within the industry to source barrels of bourbon and open relationships with distributors and other industry professionals not only for the Fortuna relaunch, but also for Rare Character's projects.  Amnd. Comp. ¶19. As a result, Moix and Nevenglosky proposed a new business venture be formed.  Amnd. Comp. ¶21.  The structure of the venture would be complex because Moix and Nevenglosky insisted they could not admit Shapira as a member to Rare Character for two reasons: (1) Moix and Nevenglosky just recently negotiated an operating agreement with Ruan, and it was too soon to revisit that process; and, (2) Rare Character and its current members had invested in some current projects, and Rare Character wanted to keep those investments separate from Shapira.  Amnd. Comp. ¶22.

As a result, the new venture was to be structured as follows: a new entity (Fortuna Bourbon, LLC) would be created with Rare Character and a Shapira-entity as members.  Amnd. Comp. ¶26(a).  Rare Character, which held the trademark for Fortuna Bourbon, would license that trademark to Fortuna Bourbon, LLC.  Amnd. Comp. ¶26(b).  The capital contributions of each member to Fortuna Bourbon, LLC would be capital funding on the part of Rare Character and on the part of Shapira, sourcing barrels with savings from avoiding broker fees of approximately $1.2 million in value.  Amnd. Comp. ¶26(c).  Shapira was also to supply barrels for Rare Character's projects, again with significant savings by avoiding broker fees.  Amnd. Comp. ¶26(d).  Because of Shapira's sourcing of barrels and assistance to Rare Character for its projects, Rare Character would

compensate Shapira via a commission or percentage of profits from sales of 25%.  Amnd. Comp. ¶26(i).   Because Shapira anticipated being able to source barrels at such significantly reduced prices, the profits expected to be generated by both Fortuna Bourbon, LLC and Rare Character were significant.  Amnd. Comp. ¶¶26(f); 26(j).  These high profits would provide an opportunity to have a "transformational event" that would result in joining Rare Character and Fortuna Bourbon, LLC into a single entity.  Amnd. Comp. ¶23.

The parties took some initial steps to launch the venture.  This included Rare Character proposing and executing along with Shapira a non-disclosure agreement with Heaven Hill, one of the sources for barrels of bourbon Shapira could bring to the venture. **Exhibit A** – March 21, 2021 Email with NDA.

Shortly after the parties agreed to this venture, Shapira suffered a severe blood infection in April 2021 that left him hospitalized and debilitated for several months. Amnd. Comp. ¶30.  This delayed the venture for nearly eight months, including Shapira's efforts to source the barrels.  Amnd. Comp. ¶32.   However, once Shapira was able to begin working, he quickly completed the process that the venture began in March 2021 and negotiated a supply agreement with Heaven Hill.  During this time, Shapira and Rare Character also began developing labels reflecting their planned agreed use of the barrels Shapira was sourcing.  Those labels reflected the agreement of the parties that the barrels would be bottled and aged in Kentucky and would be "Kentucky" bourbon and "Kentucky" Whiskey.  Amnd. Comp. ¶39; See also Exhibit 5 to Response to Temporary Restraining Order.

Rare Character incredibly claims there was no agreement by Rare Character to compensate Plaintiffs for sourcing barrels for Rare Character.  Rare Character implies

that because Plaintiffs did not attach the multitude of emails and text messages where the commission agreement was negotiated, that the allegations contained within Paragraph 27 of the Amended Complaint asserting the existence of those documents cannot be believed. *See* Motion to Dismiss ("Motion"), page ("p.") 4. While that is not the standard to be applied in considering a Motion to Dismiss[2], Plaintiffs nevertheless submit as an initial offering of proof that documents exist to support that allegation in the Amended Complaint. **Exhibit B**, an email from Nevenglosky to Shapira and Moix from November 2022 in which he provides a diagram of how the joint venture between Plaintiffs and Defendants, including several places where a 25% commission paid on profits from sales is to be paid to Shapira or one of his entities.

As the diagram sent by Nevenglosky indicates, the parties contemplated that Rare Character would never be a party to the Supply Agreement with Heaven Hill.[3] However, those barrels would be used by Fortuna Bourbon, LLC and Rare Character, with Rare Character paying for the barrels. Shapira, or a Shapira LLC ("ALS LLC") would receive 25% of the profits from the sales of those barrels. Indeed, because the parties understood Rare Character would directly benefit from the Supply Agreement with Heaven Hill, Rare Character was involved in the negotiation of the Supply Agreement with Heaven Hill and fully aware of its terms. *See* Exhibit 2 to Response to Objection to Temporary Restraining Order, filed August 14, 2023. Rare Character placed orders under the Supply Agreement, directly communicated with the CEO of Heaven Hill to confirm prices for barrels sourced

---

[2] That standard requires the Court to accept as true all well-plead allegations, i.e., not legal conclusions, contained within the Amended Complaint as true. *Bondurant v. St. Thomas Hosp.*, 366 S.W.3d 481, 483 (Ky. App. 2011) (citing *Mims v. Western-Southern Agency, Inc.*, 226 S.W.3d 833, 835 (Ky. App. 2007)).

[3] Because of Shapira's connection to Heaven Hill, the Supply Agreement ultimately was edited to be between Heaven Hill and a Shapira-entity rather than an entity in which Rare Character was also a member.

under the Supply Agreement and paid for those source barrels directly to Heaven Hill. *See* Exhibits 3-7 to Response to Objection to Temporary Restraining Order.

Unfortunately, the relationship between the parties quickly deteriorated due to Rare Character failing to pay vendors, including the bottler and MGP, a supplier of barrels of bourbon, and lack of transparency with Shapira. Amnd. Comp. ¶¶52-58; 81; 85. At the same time, distributors and individuals who had hand-selected barrels for bottling by Rare Character were communicating to Shapira that Moix and Nevenglosky were engaging in poor business practices or providing no information about order status. Amnd. Comp. ¶¶79; 82; 94-95. When Shapira begin questioning Rare Character's financial position and pushing for information to satisfy inquiries from distributors and purchasers, Shapira learned Nevenglosky and Moix were cutting Shapira out of the business and telling people "Fortuna is dead." Amnd. Comp. ¶¶91; 97. Shapira retained counsel, and this litigation ensued.

## **STANDARD OF REVIEW**

"It is well established in Kentucky that, when considering a motion to dismiss under Kentucky Rules of Civil Procedure (CR) 12.02, the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." *Bondurant v. St. Thomas Hosp.,* 366 S.W.3d 481, 483 (Ky. App. 2011) (citing *Mims v. Western-Southern Agency, Inc.,* 226 S.W.3d 833, 835 (Ky. App. 2007)). To avoid dismissal on a CR 12.02 motion premised on lack of personal jurisdiction, "Plaintiff need only make *a prima facie* showing of jurisdiction." *Hinners v. Robey,* 336 S.W.3d 891, 895 (Ky. 2011) (quoting *CompuServ, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996) (applying federal counterpart to CR 12.02) and *Neogen*

*Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir. 2002)). *"Prima facie"* is defined in part as, "on the face of it; a fact presumed to be true unless disproved by some evidence to the contrary." *Black's Law Dictionary* 1189 (6th ed. 1990).

Here, liberally construing the pleadings in a light most favorable to the Plaintiff, and taking all allegations in the Complaint as true, Plaintiff makes the appropriate *prima facie* showing Defendants Moix and Nevenglosky are subject to specific personal jurisdiction based upon the state's long-arm statute due to its sufficient minimum contacts with Kentucky.

## ARGUMENT

### I.    MOIX AND NEVENGLOSKY ARE PROPER PARTIES TO THE ACTION

Moix and Nevenglosky argue – without citation to a single legal authority for their proposition – that they cannot be personally liable in this matter because they were acting on behalf of Rare Character.  Importantly, Plaintiffs have alleged a single cause of action against Moix and Nevenglosky – Fraudulent Misrepresentation.  *See* Count III, Amended Complaint.  The Supreme Court of Kentucky held that it was a well-established matter of law that "[a]n officer who personally participates in a tort is personally liable to the victim, even though the corporation might also be liable under respondeat superior." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989) (*citing* Restatement (Second) of Agency, section 213, and Laws of Corporations, section 230).[4]  While an officer, director of shareholder was protected from personal liability when "making a contract where acting within his authority to bind the principal…[t]hese rules have nothing whatsoever to do with personal

---

[4] While *Smith* addressed officer and shareholder liability for a corporation under KRS 271A, a similar provision is found within the limited liability act.  *See* KRS 275.150(3).

liability in tort for misfeasance or nonfeasance, including liability for negligence." *Id*. The Supreme Court held "[t]he issue is whether his position as an officer or shareholder in the corporation immunizes him from tort liability in circumstances where he would be otherwise liable if he were not a shareholder.  It should be obvious that it does not." *Id*.

This is particularly true when the officer or director commits fraud on behalf of a corporation that causes harm to another.

> As the human through which the corporate principal acts, "[a] corporate officer can be held personally liable for the torts he commits and cannot shield himself behind a corporation when he is a participant." *Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, 2009 WL 1124451, at *12 (Del. Ch. Apr. 20, 2009) (internal quotation marks omitted)…"This includes situations where a corporate agent participates in corporate fraud." *Id*. "It is immaterial that the corporation may also be liable." 3A William Meade Fletcher, *Cyclopedia of the Law of Corporations* § 1135, at 231 (perm. ed., rev. vol. 2011) "A corporate officer or agent who commits fraud is personally liable to a person injured by the fraud." *Id*. § 1143, at 273. Therefore, "[a]n officer actively participating in the fraud cannot escape personal liability on the ground that the officer was acting for the corporation." *Id*. at 273–76; *accord* 19 C.J.S. *Corporations* § 642 (West 2015).

*Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 60 (Del. Ch. 2015)

## II.     THE COURT HAS PERSONAL JURISDICTION OVER MOIX AND NEVENGLOSKY

A court may exercise long-arm jurisdiction over a non-resident such as Defendants if two conditions are satisfied.  First, the claim against the non-resident must arise from one of the enumerated conduct categories under KRS §454.210.  Second, the assertion of jurisdiction cannot offend traditional notions of due process.   Here, Plaintiffs have alleged that its claims arise from Defendants' transaction of business in the Commonwealth of Kentucky.  Complaint, ¶¶ 12-13; 27; 45.  Additionally, Defendants have had sufficient minimal contacts with the Commonwealth of Kentucky so as to satisfy traditional due process considerations for the exercise of jurisdiction over a non-resident.

This Court may exercise personal jurisdiction of Moix and Nevenglosky even if their acts were all done on behalf of Rare Character. Kentucky courts will permit this Court to exercise personal jurisdiction over them under traditional notions of fair play and substantial justice. "[W]here an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice[.]" Walker v. PBI Bank, Inc., No. 2016-CA-000549-MR, 2017 WL 3951898, at *2 (Ky. Ct. App. Sept. 8, 2017) (quoting *Johnson v. Diamond Shine, Inc.*, 890 F.Supp.2d 763, 771-772 (W.D. Ky. 2012)).

## A. Plaintiff's Claims Arise from Conduct Covered by KRS §454.210

Kentucky's long arm statute KRS §454.210 authorizes courts to "exercise personal jurisdiction over a person who acts directly or by an agent as to a claim arising from the person's: (1) transacting any business in this Commonwealth." "Making telephone calls, texting, entering into contract negotiations, sending letters, and emailing are all recognized means of transacting business in the forum state." *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 341 (Ky. App. 2019) (citing *Hall v. Rag-O-Rama, LLC*, 359 F.Supp.3d 499, 509 (E.D. Ky. 2019)).

Here, Plaintiff's Complaint alleges sufficient facts to establish a *prima facie* showing that its claims arise from Defendants' transaction of business with Shapira within the Commonwealth of Kentucky. First, Plaintiffs allege that Moix reached out to Shapira in Kentucky to begin discussing the two possibly working together on a joint venture that ultimately became the basis of the claims to this lawsuit. Complaint, ¶ 16. Defendants then directed communications to Shapira in the state of Kentucky regarding how to structure their business relationship. Complaint, ¶¶ 22-26. These discussions

8

culminated in an in-person meeting at Shapira's home in Jefferson County Kentucky on December 6, 2022.  Complaint, ¶41.  This included contracting with Shapira for a line of credit.  (See Exhibit 1 to Complaint).

In addition to this showing from the Complaint, the attached affidavit of Andrew Shapira indicates that Defendants each had numerous visits to Kentucky all designed to develop their joint venture and further their business.  This included directing emails and texts to Shapira with proposed organizational structures and directions and input on efforts to negotiate a Supply Agreement.   In addition, both Defendants were present in Jefferson County between December 3-December 6th.  During this visit, Defendants met repeatedly with Shapira and third parties Shapira was introducing to Defendants to further the joint venture.

### B.  Defendants' Contacts With Kentucky Satisfy Due Process

"Due process requires…that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Intl. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A plaintiff may demonstrate that a court's exercise of personal jurisdiction is not violative of due process concerns  by establishing that a court has either general jurisdiction or specific jurisdiction over the defendant. *BNSF Railway Co. v. Tyrrell,* 137 S. Ct. 1549, 1558 (2017). (citations omitted). General jurisdiction is found when a foreign defendant's "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman,* 134 S. Ct. 746, 749 (U.S. 2014) (citing *International*

*Shoe Co.* v. *Washington*, 326 U. S. 310, 318 (1945)). Specific jurisdiction exists if the cause of action either arises from or is related to a set of "minimal contacts" that the defendant has purposefully made with the forum state such that maintenance of the suit does not offend traditional notices of fair play and substantial justice. *Daimler AG,* 134 S. Ct. at 754.

Under the "minimum contacts" analysis, "it is a well-settled principle that exercising personal jurisdiction does not turn on whether the defendant at any point physically entered the forum state." *Hinners v. Robey*, 336 S.W.3d 891, 898 (Ky. 2011). This is because "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). In *International Shoe Co. v. State of Washington*, the Supreme Court identified factors to be considered in determining if a defendant has had sufficient "minimum contacts". These include: the quantity and quality of defendant's activities, whether the activities were continuous and systematic, whether the defendant availed himself of the laws of the forum state, and whether defendant's actions gave rise to the cause of action. *Id.* Thus, the question is whether "a commercial actor's efforts are 'purposefully directed' toward residents of another state." *Id.* "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has `purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise or relate to' those activities." *Hinners* 336 S.W.3d at 898-99 (quotations omitted). The Supreme Court has "emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and

sanctions in the other State for the consequences of their activities." *Id.* at 897-98 (quotations omitted).

In the present case, the quantity and quality of Defendants activities weigh in favor of exercising personal jurisdiction. Defendants actively sought out and contacted Shapira, a Kentucky resident, to join in their joint venture. The routinely directed emails, calls and text messages to Shapira and others within Kentucky. This included routine contacts with bottlers and other third-parties such as Bluegrass Bottling, White Dog Trading, Divine Spirits, and Heritage Distribution in Kentucky. They also corresponded and directed a real estate broker to pursue purchasing a rickhouse in Kentucky (**Exhibit C** – Emails with Broker). Further, Defendants frequently came to Kentucky, staying at the Omni in downtown Louisville, to meet with industry experts Shapira introduced them to and to visit and taste bourbons with distillers and bottlers. As noted, these activities were continuous and systematic from January 2022 to July 2023. *See* **Exhibit D** – Affidavit of Andrew Shapira.

In *Griffin Industries, Inc. v. Turner Envirologic, Inc.*, a trial court dismissed Griffin's complaint against Turner due to lack of personal jurisdiction. 2003 WL 22111116, *1 (Ky. App. 2003). The Court of Appeals reversed, finding that under specific jurisdiction analysis, Turner had sufficient contacts with Kentucky for jurisdiction to be exercised over it as a non-resident. *Id.* Turner, through an agent, solicited estimates and bids from Griffin for manufacture of products. The initial estimate did not result in a contract, but Turner contacted Griffin for additional estimates. *Id.* All solicitations were done via mail directed to Kentucky or phone calls to Kentucky. *Id.* A contract was eventually formed following phone and mail negotiations. *Id.* The parties discussed additional estimates following the contract formation as well. *Id.*

In reversing the trial court, the Court of Appeals analyzed numerous contacts Turner had with Kentucky.  First, the Court found Turner had "purposefully availed itself of the privilege of acting within the forum state or causing a consequence in the forum state" by transacting business in Kentucky that Turner should reasonably foresee would have consequences in Kentucky.  *Id*. at *3. (citations and quotations omitted).  Turner actively sought out proposals for manufacturing products from a Kentucky corporation via telephone calls, and such activity indicated personal jurisdiction was proper.  *Id*. Additionally, Turner transacted business in Kentucky and entered into a contract with a Kentucky corporation.  *Id*.  As a result, the Court of Appeals held "Turner should have reasonably foreseen the consequences of its solicitation of and entering into business with Griffin would have in Kentucky."  *Id*.  The Court then noted Kentucky has an interest in resolving the controversy because "Kentucky has an interest in seeing that contracts formed in this Commonwealth are carried out."  *Id*. at *5. (quotations omitted).  Second, the Court noted that exercise of jurisdiction is normally easier over an out-of-state seller rather than an out-of-state buyer.  *Id*.  The Court noted this is because the seller often "initiates the deal, tends to set many, if not all of the terms on which it will sell."  *Id*. at *5, n. 3.  Third, Turner engages in interstate commerce, and therefore should expect to be subject to jurisdiction in courts outside of its home state.  *Id*.  Finally, the quantity and quality of physical contacts with the state weighed in favor of exercising jurisdiction because Turner actively solicited business in Kentucky.  *Id*.

Applying these considerations to the present case, Kentucky has an interest in resolving the contract that was formed in the Commonwealth.  Second, Defendants were not passive participants, but rather initiated and were the driving force behind the agreements that form the basis of Plaintiffs' claims.  Third, Defendants are engaged in

interstate commerce, frequently conducting business in Kentucky.  Finally, the quantity and quality of contacts with Kentucky are significant.  Defendants began soliciting Shapira to join their venture in 2019.  Defendants have contacted Kentucky hundreds of times via telephone and email for multiple contracts with residents of this Commonwealth.  Put simply, Defendants should reasonably have foreseen that these repetitive contacts with  Kentucky residents could result in consequences in Kentucky which could lead to Defendants being sued in Kentucky courts.

The exercise of specific personal jurisdiction is fact-intensive, and courts are encouraged to consider the facts of each case rather than look for a bright-line rule.  As the Complaint and Affidavit of Andrew Shapira indicate, this Complaint does not arise from one isolated business transaction between Plaintiffs and Defendants.  Rather, a series of business dealings spanning multiple years, with numerous in-person visits to Kentucky are at the heart of this dispute.  As a result, the facts of this case indicate sufficient minimal contacts to satisfy due process concerns in the exercise of specific personal jurisdiction.

### III.    PLAINTIFFS' CLAIM FOR BREACH OF CONTRACT

#### A.  The Statute of Frauds Does Not Bar the Claim

While Plaintiffs acknowledge there is no formal executed contract in this case, there are sufficient writings documenting the agreement between the parties which satisfy the "writing" requirement under the statute of frauds.  As the Western District has recognized, Kentucky courts loosely interpret the "writing" requirement contained within the statute of frauds and have determined correspondence similar to e-mails are sufficient "writings."  *United Propane Gas, Inc. v. Pincelli & Assocs., Inc.*, 2015 WL 7431045 at *5 (W.D. Ky. Nov. 20, 2015) (citing *TWB Distribution, LLC v. BBL, Inc.*, 2009 WL 5103604

at *7 (W.D. Ky. Dec. 17, 2009)). Further, because KRS 369.102(8) permits electronic signatures, the Western District of Kentucky has held that Kentucky law permits electronically delivered documents and signatures affixed thereto, such as emails, to satisfy the signature requirement of the statute of frauds. *United Propane Gas Inc. v. Pincelli & Assocs. Inc.*, 2014 WL 496932, at *3 (W.D. Ky. Feb. 6, 2014).

Here, the Complaint alleges that there are numerous emails and text messages between the parties memorializing the terms of their agreement.  Amnd. Comp. §27. Several of these communications have been produced to date, either in response to the Objection to Temporary Restraining Order, or as attachments to this Response.  Notably, the email from Nevenglosky attaching the structure of the joint venture reflects the 25% commission paid as a salary to Shapira or his related entities from Rare Character.  As such, with regard to the breach of contract pertaining to the commission agreement, the statute of frauds has been satisfied.

Even if the emails do not satisfy the statute of frauds, the agreement is one that falls outside of the statute of frauds because the parties intended for the commission agreement to be completed within a year of its formation.  "In construing the Statute of Frauds, the general rule is that, if a contract may be performed within a year from the making of it, the inhibition of the Statute does not apply, although its performance may have extended over a greater period of time." *Sawyer v. Mills*, 295 S.W.3d 79, 84 (Ky. 2009), *as modified* (Nov. 2, 2009).  "The appropriate inquiry thus is whether under the evidence of a particular case the parties contemplated that the contract at issue would be performed within a year, and if, by its terms, it could be." *Id.*

Here, the allegations indicate that the agreement for Shapira to source barrels of bourbon for Rare Character's products in exchange for a commission was intended to be

completed within a year.  Specifically, the Complaint alleges the commission agreement was a temporary method to allow Shapira to source barrels for two projects in the Exceptional Series Rare Character had launched prior to Shapira's involvement – the Malt Whiskey Exceptional Series and the Rye Whiskey Amburana Exceptional Series.  Amnd. Comp., ¶¶ 26(i), 26(j), 48, 49.  Shapira was to source 605 barrels of Kentucky Straight Malt Whiskey and 200 barrels of Rye Whiskey for the Exceptional Cask Series, which the parties intended to be completed within one year of the agreement. *Id*. at ¶¶ 26(j), 37, 48. Further, the commission arrangement was a temporary method to compensate Shapira for work with Rare Character without yet admitting Shapira to that LLC.  *Id*. at ¶¶ 22-25. It was envisioned by the parties that these two Exceptional Series projects would generate enough revenue to permit Rare Character to undergo "a transformational event…facilitating the opportunity to combine Rare Character" and Fortuna Bourbon, LLC into one singular entity.  *Id*. at ¶ 23.  At that point, Plaintiffs would be a member of the combined entity and the commission agreement would no longer be needed.

Rare Character argues that because the agreement was reached in April 2021, sourcing of barrels in April 2022 Unfortunately, the completion of the agreement as contemplated within one year was hindered by Mr. Shapira suffering a significant blood infection in April 2021 that delayed his efforts for eight months.  *Id*. at ¶30-31. However, even if a contract's actual performance "may have extended over a greater period of time" than one year, if the original intent of the parties was for the contract to be completed within a year, the statute of frauds does not apply.  *Sawyer*, 295 S.W.3d at 84. Viewing these allegations in a light most favorable to the Plaintiffs, Rare Character's argument fails.

Finally, when an oral agreement has been fully performed, the statute of frauds no

longer applies. *Pilcher v. Stadler*, 124 S.W.2d 475, 479 (Ky. 1939); *Chin v. Chin*, 494 S.W.3d 517, 522 (Ky. App. 2016); *Colin v. Magnum Drilling of Ohio, Inc.*, 932 F.2d 967, 1991 WL 78759, *4 (6th Cir. 1991) (applying Kentucky law). Here, Shapira performed his obligations under the agreement when he sourced 605 barrels of Malt Whiskey in April 2022 and again when he sourced 200 barrels for the Rye Whiskey Exceptional Series in October 2022. Amnd. Comp., ¶¶ 26(j), 48, 49. Thus, the contract was no longer executory and the statute of frauds does not apply.

### B. The Requisite Elements of a Contract Are Alleged

Incredibly, Rare Character argues that the terms of the contract are not definite and complete because the Complaint purportedly fails to identify what projects Rare Character had in progress which would benefit from Shapira's sourcing of barrels. In actuality, the Complaint identifies the two projects quite specifically – the Malt Whiskey Exceptional Series and the Rye Whiskey Amburana Cask Exceptional Series projects. Amnd. Comp., ¶¶ 26(j), 48.

### IV. THE UNJUST ENRICHMENT CLAIM

Rare Character next argues that a party cannot seek recovery under an equitable theory such as unjust enrichment if the statute of frauds bars a contract. In support of this misplaced argument, Rare Character cites to *Louisville Trust Co. v. Monsky*, 444 S.W.2d 120 (Ky. 1969). However, the Court of Appeals of Kentucky expressly rejected applying *Monsky* as a "general proposition" that "quantum meruit could not be used to avoid the statute of frauds..." *Buttoroff v. United Elec. Labs., Inc.*, 459 S.W.2d 581, 587 (Ky. App. 1970). Instead, *Buttoroff* clarified that a party may seek equitable remedies when he has partially performed under a contract that is barred by the statute of frauds. *Id. See also Betsy Wilson Realty, Inc. v. Green*, 2009 WL 3400663, *5 (Ky. App.);

*Thoro-Graph, Inc. v. Lauffer*, 2012 WL 5038254, *5 (Ky. App.).[5]  Here, Shapira sourced approximately 591 barrels of bourbon for Rare Character.  Amnd. Comp. ¶129  Those barrels were obtained at significantly reduced rates, incurring a benefit to Rare Character of "$928,000 in avoided broker fees and other sourcing costs."  *Id*.  Additionally, Shapira fostered relationships and negotiated contracts on behalf of Rare Character to provide bottling, warehousing and distribution relationships, all of which conferred a benefit to Rare Character.  *Id*. at ¶¶42, 72, 130.

Further, Section 31 of the Restatement of Restitution (2023) specifically recognizes that a person who renders performance under an agreement that cannot be enforced by virtue of the statute of frauds "has a claim in restitution against the recipient as necessary to prevent unjust enrichment."  In addition to those cases cited above, other Kentucky cases adhere to this principle from the Restatement.  Specifically, in *Cougler v. Fackler*, Fackler sued Cougler, a prostitute, for failure to convey real property for which he made down payments and gave money for improvements.  510 S.W.2d 16, 18 (Ky. 1974).  Cougler claimed that there was no oral agreement between them for her to convey a real estate title to Fackler and that any monies paid were in exchange for sexual favors.  *Id*.  On appeal, the Court of Appeals held that if the jury determined there was a contract between Fackler and Cougler, Cougler could not be compelled to deed the real property because of the statute of frauds.  *Id*.  Thus, the court concluded that the only remedy available to Fackler was restitution for the amounts he paid to Cougler if the jury determined those payments were not paid for prostitution services, but rather for the property.  *Id*. at 19.

---

[5] Pursuant to Kentucky Rule of Appellate Procedure 41(A)(4), these unpublished opinions are not binding authority.

Finally, Rare Character claims that the Unjust Enrichment claim fails because Shapira's Complaint purportedly fails to allege facts to show Rare Character has received any benefit from sales of the barrels. This argument is again contrary to clear allegations in the Complaint, which allege that the whiskey sourced by Shapira through MGP for the Amburana Cask Exceptional Series have been "selected and purchased by various retailers and customers" with planned bottling to occur in the second quarter of 2023. Amnd. Comp. ¶68. The Complaint also states that "[m]ost of Rare Character's products outside Fortuna were pre-sold…" with purchasers buying barrels prior to bottling after selecting them through in-person tasting. *Id.* at ¶73. Finally, Shapira also quantified the value of his efforts sourcing of the barrels, providing factual allegations that Rare Character incurred a benefit through his sourcing of "$928,000 in avoided broker fees and other sourcing costs." Amnd. Comp. ¶129.

## V.    THE FRAUDULENT MISREPRESENTATION CLAIM

Rare Character again overstates the holding of cases cited within its briefing to the Court. Rare Character cites the Court to *Scott v. First Southern National Bank* for the proposition that "the Statute of Frauds requires that the alleged representations be in writing to be enforceable." *See* Motion to Dismiss, p. 14. In actuality, the holding in *Scott* is much more limited – to wit, a claim for fraudulent misrepresentation based on a representation of a promise to loan money is barred by the statute of frauds. Here, Plaintiffs' claims are not premised on a promise to loan money. Indeed, Kentucky's Court of Appeals has expressly rejected Rare Character's argument that the statute of frauds precludes any claim of fraudulent misrepresentation based upon an oral promise or contract. *PCR Contractors, Inc. v. Danial*, 354 S.W.3d 610, 614 (Ky. App. 2011) (holding argument that fraudulent misrepresentation claims based on oral promises or contracts

are barred by statute of frauds was "misplaced").   Specifically, the Court adopted the Restatement (Second) of Torts §530, comment c,  which states:

> If the agreement is not enforceable as a contract, as when it is without consideration, the recipient still has, as his only remedy, the action in deceit ... *The same is true when the agreement is oral and made unenforceable by the statute of frauds,* or when it is unprovable and so unenforceable under the parol evidence rule.

*Id*. at 614 (emphasis in original).

Rare Character next argues that its promise to pay Shapira a 25% commission on future sales of barrels he sourced cannot form the basis of a fraudulent misrepresentation statement because it is a promise to perform in the future, rather than a statement made concerning a present or pre-exiting fact.   However, Kentucky Courts recognize that fraudulent misrepresentation can occur where the person "making representation as to his future intentions...had no intention of carrying them out." *Major v. Christian County Livestock Market*, 300 S.W.2d 246, 249 (Ky. 1957).

In *Davis v. Siemens Medical Solutions USA, Inc*., Davis alleged, *inter alia*, a claim for fraudulent misrepresentation against Siemens.   399 F.Supp.2d 785, 800 (W.D.Ky. 2005).   Davis alleged that at a meeting, a representative of Siemens promised Davis that he would be paid "an override commission on all national and governmental sales regardless of his personal involvement in the actual sales." *Id*.   Based on that promise, Davis accepted employment with Siemens. *Id*.   In denying Siemens' summary judgment motion, the court held that under Kentucky law, if a promise to pay commissions is made with the knowledge it would never pay the commission, the statements properly state a claim for fraudulent misrepresentation. *Id*.   Because Davis alleged Siemens had no intent to ever pay commissions to him when it made the promise, he had sufficiently "state[d] a

claim for fraud against Siemens." *Id*. Here, as with the plaintiff in *Davis*, Shapira alleged that "...Rare Character, Moix and Nevenglosky did not intent to and in fact did not compensate Shapira." Amnd. Comp. ¶137.

Rare Character alleges that Shapira did not detrimentally rely on the misrepresentations regarding his commission. First, Rare Character argues he was offered a 25% stake in Fortuna Bourbon, LLC in exchange for his efforts on behalf of Rare Character. However, this argument is contrary to the allegations in the Complaint, which makes clear Shapira was offered a 25% stake in Fortuna Bourbon, LLC for his efforts related Fortuna Bourbon projects, and because he could not be given a similar membership stake presently in Rare Character, he would be paid a commission of sales. Amnd. Comp. ¶¶22-26.

Finally, Rare Character argues that Shapira's claim fails because "there are no allegations that Shapira expended additional time, effort, or money in *separately* promoting Rare Character's existing business..." Motion, p. 16. This argument is contrary to the allegations in the Complaint. For instance, in Paragraph 49 of the Amended Complaint, Shapira alleges that he worked separately to finance and source whiskey for almost all of Rare Character's offerings. Paragraph 52 specifically alleges that one of those sources of whiskey for Rare Character was MGP, which did *not* source barrels for Fortuna Bourbon, LLC. Similarly, Paragraph 50 states Shapira worked to foster relationships for Rare Character alone. Finally, Paragraph 151 alleges that "Shapira would not have assisted Rare Character or expended his time, efforts and money in furtherance of Rare Character." As these allegations show, Shapira completed several tasks solely to benefit Rare Character's business.

## VI.   THE BREACH OF FIDUCIARY DUTY CLAIM

Whether a fiduciary duty exists is a question of law that this Court may properly determine.  Because Fortuna Bourbon, LLC is a Delaware limited liability company, this Court must apply Delaware law in determining whether a fiduciary duty exists.  *See Howell Contractors, Inc. v. Berling*, 383 S.W.3d 465, 467-468 (Ky. App. 2012) (holding Kentucky court must apply the law of the state of organization of the LLC).  However, venue may properly lie for a breach of fiduciary duty claim, which is a tort action pursuant to KRS 452.450.

Under Delaware law, managing members of an LLC owe default duties of loyalty, care and good faith to other members of the LLC.  *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012). These duties "include the requirement to make good faith efforts to ensure that the LLC fulfilled its contractual duty to its members.  More importantly, the manager-defendants' fiduciary duties included the duty…not to knowingly mislead" the non-managing member. *Metro Comm. Corp. BVI v. Advanced Mobilecomm Tech., Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004). Pursuant to §18-402 of the Delaware Limited Liability Act, unless an operating agreement provides otherwise, management of an LLC is vested in its members according to the percentage of membership units owned by the members.  In this case, Rare Character owns 75% of the membership units, and is therefore the managing member of Fortuna Bourbon, LLC.  As the managing member, Rare Character owes duties of good faith, loyalty and care to the minority member, 7th Heaven, LLC.

The question then becomes does Rare Character also owe those duties to Shapira and Fortuna Bourbon Company, LLC. Under Delaware law, fiduciary duties can be imputed to non-members of a limited liability company when a member creates a

separate entity solely for the purpose of furthering the business of the limited liability company. *Barbieri v. Swing-N-Slide Corp.*, 1997 WL 55956, *2-*3 (Del. Ch. Jan. 29, 1997) (holding where member of company formed a separate entity solely for purposes related to the company, fiduciary duties would be imputed to separate entity). *See also REDUS Peninsula Millsboro, LLC v. Mayer*, 2014 WL 4261988, *3 (Del. Ch. Aug. 29, 2014).

The Complaint alleges sufficient facts to show that the Rare Character knew of an encouraged Shapira to form Fortuna Bourbon Company, LLC specifically to enter into the Supply Agreement to benefit Fortuna Bourbon, LLC. Specifically, the Complaint alleges that Rare Character and 7th Heaven jointly decided for Shapira to form an entity to enter into the agreements to source barrels for the benefit of Fortuna Bourbon, LLC and Rare Character. Amnd. Comp. ¶26. Shapira then formed those entities as contemplated, and entered into the Supply Agreement with Heaven Hill. Amnd. Compl. ¶35. Following formation of these entities and execution of the Supply Agreement, Shapira, Moix and Nevenglosky again met and reaffirmed that the venture would operate with those entities and Supply Agreement in place. Amnd. Comp. ¶45. Afterwards, Rare Character contacted Heaven Hill directly to place orders for barrels under the Supply Agreement. Amnd. Comp. ¶99.[6] Thus, viewed in a light most favorable to the Plaintiffs, the Complaint alleges facts establishing that Rare Character, as managing member of Fortuna Bourbon, LLC, encouraged 7th Heaven's sole member to enter into contractual relationships to benefit

---

[6] Since the filing of the Complaint, Plaintiffs have submitted additional evidence to the Court that Rare Character not only placed orders under the Supply Agreement, but directly communicated with the CEO of Heaven Hill to confirm prices for barrels sourced under the Supply Agreement and paid for those source barrels directly to Heaven Hill. Additionally, that evidence showed Rare Character received drafts of the Supply Agreement and was directly involved in its negotiation. *See* Exhibits 2-7 to Response to Objection to Temporary Restraining Order, filed August 14, 2023.

Fortuna Bourbon, LLC.  Together, these allegations establish that Rare Character knew of and in fact encouraged 7th Heaven and Shapira to form a separate entity to enter into the Supply Agreement; that Rare Character – despite not being a party to the Supply Agreement - was aware of the Supply Agreement and its terms; and, that Rare Character accepted the benefits of and terms of the Supply Agreement.

Rare Character next argues that because it supplied some (but not all) information related to the barrels, there has been no breach of its fiduciary duties.  First, as the Amended Complaint alleges, Plaintiffs requested eleven pieces of information from Fortuna Bourbon, LLC.  Amnd. Comp. ¶111.  While Fortuna Bourbon, LLC supplied some of those eleven pieces of information, it did not produce all requested documentation. Amnd. Comp. ¶¶113, 115. Second, the basis of the breach of fiduciary duty claim is not purely related to documentation.  Amnd. Comp. ¶¶102, 155-157.  As the Count makes clear, it pertains to the duty of candor and good faith regarding the "intended and planned uses for barrels sourced under the Supply Agreement." Amnd. Comp. ¶155. The duty of candor and good faith "include the requirement to make good faith efforts to ensure that the LLC fulfilled its contractual duty to its members."    *Metro Comm*, 854 A.2d at 153. Here, Fortuna Bourbon, LLC's member, 7th Heaven, formed a separate entity at the direction and approval of Rare Character for purposes of sourcing barrels for use by Fortuna Bourbon, LLC.  Rare Character was aware of the terms of the Supply Agreement, and in fact had been involved in the negotiation of the Supply Agreement.  Amnd. Comp. ¶156. *See also* Exhibit 2 to Response to Objection to Temporary Restraining Order.  As alleged in the Complaint, Fortuna Bourbon, LLC agreed to honor the Supply Agreement conditions placed on the barrels.  Amnd. Comp. ¶¶ 141-143. Despite this, Rare Character did not act in good faith to ensure it fulfilled its contractual duties to 7th Heaven regarding

its planned use of the barrels.  Rare Character failed to provide information related to the location of the barrels when requested by Shapira and 7th Heaven.  Amnd. Comp. ¶¶113, 115.

Worse yet, Rare Character breached its duty "not to knowingly mislead" the non-managing member. *Metro Comm.*, 854 A.2d at 153. Despite assuring 7th Heaven that the barrels would be bottled in Kentucky, some of those barrels were moved to Indiana for bottling.  Amnd. Comp. ¶39-41, 142-144.  Rare Character, as managing member of Fortuna Bourbon, LLC, did not disclose this information to 7th Heaven. In fact, Rare Character intentionally removed location data from spreadsheets and documents supplied to 7th Heaven and Shapira when purporting to provide documentation about the barrels.  Amnd. Comp. ¶¶113, 115.  It was not until a third party – Bluegrass Bottling – provided documentation about shipments it made at the direction of Rare Character that Plaintiffs learned Rare Character had moved the barrels to multiple different locations, including to Indiana, and was altering its plans to label and bottle the barrels. **Exhibit E** - Documents from Bluegrass Bottling.

### VII.   THE BREACH OF CONTRACT CLAIM IN COUNT IV

This Count alleges that Rare Character and Plaintiffs had an agreement that in exchange for Fortuna Bourbon Company, LLC sourcing barrels for Fortuna Bourbon, LLC and Rare Character, Rare Character and Fortuna Bourbon, LLC would adhere to the planned use of those barrels – namely that they would marketed and sold as Kentucky bourbon or whiskey distilled and bottled in Kentucky .  Amnd. Comp. ¶¶142-143.  As a result, Plaintiffs seek damages resulting from the damages flowing from breaching that agreement, which includes diminution of the value of the barrels, damage to the Fortuna label, and damage by causing FBC to breach the Supply Agreement.

Rare Character argues that any damages flowing from breach of an agreement between the two members of Fortuna Bourbon, LLC cannot be before this Court. Rare Character cites to §18-305(f) of the Delaware Limited Liability Act for this proposition. However, that statute merely addresses how a member may bring a cause of action to enforce its right to inspect books and records of the limited liability company.  Pursuant to KRS 454.210, a Kentucky court can exercise personal jurisdiction over a limited liability company if the claim arises from contracting to supply services or goods in this Commonwealth. Here, the Complaint alleges that Rare Character agreed to market and sell bourbon and whiskey supplied under the Supply Agreement according to a specific planned use.  Amnd. Comp. ¶143.  Thus, this Court properly has jurisdiction over Plaintiff's claims for breach of that oral contract to provide marketing services.

### VIII.  THE DECLARATORY RELIEF

Rare Character cites to §18-305(f) of the Delaware Limited Liability Act for the proposition that this Court cannot issue a declaratory ruling concerning the duties and obligations of a member of a Delaware LLC.  However, that statute merely addresses how a member may bring a cause of action to enforce its right to inspect books and records of the limited liability company.   It is not a claim premised on the rights or obligations between members of an LLC.  And, as Rare Character points out, the party seeking the declaratory relief, the claim is brought by Fortuna Bourbon Company, LLC, which is not a member of Fortuna Bourbon, LLC.

The declaratory relief sought pertains to an agreement to bottle and label barrels of bourbon and whiskey sourced by Fortuna Bourbon Company, LLC that was made in Jefferson County, Kentucky.  Amnd. Comp. ¶45. The Court has authority to declare whether that agreement requires Rare Character to provide information to Fortuna

Bourbon Company, LLC regarding any changes to the agreement regarding the planned use of those barrels. Jurisdiction and venue are properly before this Court under KRS 454.210 and KRS 452.450.

### IX.    INJUNCTIVE RELIEF

Rare Character argues that any movement of barrels to Indiana in violation of the agreement between the parties to store pending bottling and then bottle the barrels in Kentucky can be compensated through monetary damages, and therefore cannot state a claim for injunctive relief. As argued within the Response to Objection to Temporary Restraining Order, there are also damages flowing from reputational harm sustained by Shapira. In support of that Response, Shapira provided an affidavit detailing that he used his reputation to arrange for several sales pitches for Fortuna and Rare Character's Exceptional series products that were to be distilled, aged and bottled in Kentucky. This included meeting with Shapira's personal contacts in the industry, including bringing potential buyers to taste barrels and to hand-select a barrel to purchase. Those buyers were promised their barrel would be labeled a "Kentucky Malt Whiskey" with the purchaser's name on it. A copy of slides from the marketing pitch used by Shapira was attached as Exhibit 9 to that Response. As the Response to the Objection, indicated, several of those purchasers have begun questioning Shapira about Rare Character, its failure to respond regarding inquiries about their purchased barrels, and changes in bottling. *See* Exhibit 10 to Response to Objection to Temporary Restraining Order.

Conduct that causes reputational damage is both "difficult to calculate" and "may lead to irreparable harm." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381–82 (6th Cir. 2006)); *see also United States v. Miami Univ.*, 294 F.3d 797, 819 (6th Cir. 2002) ("An injury is not fully compensable by money damages if the nature

26

of the plaintiff's loss would make damages difficult to calculate. In general, . . . injury to reputation [is] difficult to calculate."); *Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir. 1992). ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

## **CONCLUSION**

This Court may properly exercise personal jurisdiction over Defendants Moix and Nevenglosky.  Defendants actively solicited a Kentucky resident to do significant business with them and Rare Character over an extended period of time.  In so doing, Defendants purposefully directed contacts to Kentucky, and availed itself of the privileges of transacting business in Kentucky.  Further, viewing the allegations in the Complaint in the light most favorable to the Plaintiffs, each cause of action has properly stated a claim upon which relief may be granted. As such, this Court should DENY Defendants' Motion to Dismiss.

Respectfully submitted,

*/s/  John D. Cox*
John D. Cox
LYNCH COX GILMAN & GOODMAN, PSC
500 West Jefferson Street, Suite 2100
Louisville, Kentucky 40202
(502) 589-4215 telephone
(502) 589-4994 facsimile
jcox@lynchcox.com
***Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing was filed electronically this 3rd day of January, 2024, via the Court's ECF system, which will serve all counsel of record, scheduled to receive notice of filings in this case.  As a precaution, counsel certifies that a copy has also been served by electronic mail upon the following counsel:

Jennifer M. Barbour
**Gray Ice Higdon, PLLC**
3939 Shelbyville Road, Suite 201
Louisville, KY 40207
jbarbour@grayice.com
*Former Counsel for Plaintiffs*

Ian T. Ramsey
Alisa Micu
**Stites & Harbison, PLLC**
400 W. Market Street, Suite 1800
Louisville, KY 40202
iramsey@stites.com
amicu@stites.com
*Counsel for Rare Character Whiskey Co., LLC, Pablo Moix and Peter Nevenglosky*

Brian Haara
**Fultz Maddox Dickens**
101 S. Fifth Stret, 27th Floor
Louisville, KY 40202
bhaara@fmdlegal.com
*Counsel for Fortuna Bourbon, LLC*

/s/  John D. Cox
John D. Cox