UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANDREW SHAPIRA, *et al.*                                        **Plaintiffs**

v.                                          Civil Action No. 3:23-cv-602-RGJ

RARE CHARACTER WHISKEY CO., LLC,                               Defendants
*et al.*

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, Andrew Shapira ("Shapira"), 7th Heaven, LLC ("7th Heaven"), and Fortuna

Bourbon Company, LLC ("FBC") (collectively, "Plaintiffs"), initiated this action in Jefferson

County Circuit Court.  [DE 1 at 1].  Defendants, Rare Character Whiskey Co., LLC ("Rare

Character"), Pablo Moix ("Moix"), and Peter Nevenglosky ("Nevenglosky") (collectively,

"Defendants"), timely removed to this Court.  [*Id.* at 1–3].  Defendants now move to dismiss for

lack of personal jurisdiction and failure to state a claim.  [DE 10].  Plaintiffs responded and

Defendants replied.  [DE 11; DE 12].  Accordingly, this motion is ripe.  For the reasons below, the

motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.      Background

Plaintiffs' complaint arises from the deterioration of the business relationship between

Shapira and his partners, Moix and Nevenglosky.  Shapira, Moix, and Nevenglosky entered a joint

business venture together, combining their different professional backgrounds.  Shapira had

experience in his family-owned distilled spirits business, as well as experience as an investment

banker on Wall Street.  [DE 1-1 at 108].  Moix had experience in hospitality, bars, and restaurants.

[*Id.* at 109].  Nevenglosky had experience in marketing and "premium niche spirit brands."  [*Id.* at

1

110].   As a joint venture, they decided to launch Fortuna Bourbon Whiskey as part of Rare Character's product offerings via a new entity with all three as members.  [*Id.* at 110].

Shapira alleges his contributions to the joint venture included utilizing his industry connections to obtain specific barrels of bourbon and whiskey; procuring those barrels at lower costs; utilizing his relationships with distributors, retailers, and liquor regulators; providing financial assistance; and leveraging his professional experience.  [*Id.* at 111–12].  In return, Shapira would own 25% of Fortuna Bourbon, LLC ("Fortuna Bourbon"), and all new projects pursued jointly by Shapira and Rare Character would fall under Fortuna Bourbon's label.  [*Id.* at 112–13].  Additionally, Shapira alleges that it was "understood that for any other projects already in progress that would benefit from Shapira's assistance, Rare Character would compensate Mr. Shapira via a commission or sales charge of ~25%."  [*Id.* at 113].

At the beginning of the collaboration, Shapira had a blood infection and was hospitalized for over a month in April 2021.  [*Id.* at 114].  Once recovered, he created 7th Heaven as the entity through which he did business with Rare Character and FBC as the entity through which he would source whiskey for Rare Character and Fortuna Bourbon.  [*Id.*].  7th Heaven became the entity through which Shapira owned 25% of Fortuna Bourbon.  [*Id.* at 116].  Rare Character owned 75% of Fortuna Bourbon.  [*Id.*].  Through FBC, Shapira sourced hundreds of barrels through a confidential supply agreement to benefit Fortuna Bourbon and Rare Character.  [*Id.* at 115, 262–68].  In a press release, Rare Character advertised that Shapira was "joining" it.  [*Id.* at 117].  When demand increased, Shapira provided $1 million via a revolving line of credit agreement and sourced additional barrels through separate suppliers.  [*Id.* at 117–18].  Shapira alleges that 200 of these barrels were used to create Rare Character's Single Barrel Series Straight Rye Whiskey—a product not under the Fortuna Bourbon label receiving critical acclaim.  [*Id.* at 118].

2

Shapira alleges that, despite assurances from Moix and Nevenglosky that one would be created, an "Operation Agreement" was never formed to ratify the parties' understanding that Rare Character would compensate Shapira via a commission. [*Id.* at 116–17]. Moix and Nevenglosky reaffirmed that Shapira would be compensated as agreed upon at a meeting at Shapira's house in December 2022. [*Id.* at 117].

Eventually, Shapira's relationship with Moix and Nevenglosky began to fray. Shapira alleges that Moix and Nevenglosky ignored his advice about purchasing agreements with suppliers such as MGP, declined financing opportunities provided by Shapira, and cut Shapira out of critical communications and decision-making on behalf of the business. [*Id.* at 119–22]. Shapira repeatedly expressed his concerns about the financial health of the business, the management of the operation, and the way Moix and Nevenglosky behaved toward external business partners such as bottlers, distributers, and suppliers. [*Id.* at 122–33]. Shapira became increasingly concerned not only about the health of the joint business venture with Moix and Nevenglosky, but also about preserving his own reputation within the industry. [*Id.*]. As a result, Shapira retained counsel. [*Id.* at 133].

After retaining counsel and seeking disclosure of financial records from Rare Character, Rare Character eventually paid the "payoff amount" due on the revolving credit agreement to 7th Heaven. [*Id.* at 135]. But Rare Character, Moix, and Nevenglosky never disclosed to Shapira where barrels he sourced were located. [*Id.* at 137]. Shapira alleges that at least some of the barrels had been shipped to Indiana at the direction of Rare Character, Moix, and Nevenglosky, which eliminated the possibility of selling them under the Fortuna Bourbon label and diminished their value. [*Id.* at 138–39]. Subsequently, Shapira filed this lawsuit.

Plaintiffs brought six counts in the amended complaint: breach of contract against Rare Character (Count I); unjust enrichment against Rare Character (Count II); breach of contract against Rare Character (Count III); fraudulent misrepresentation against Rare Character, Moix, and Nevenglosky (Count IV); breach of fiduciary duty against Rare Character (Count V); aiding and abetting breach of fiduciary duty against Divine Spirits, LLC ("Divine Spirits") and White Dog Trading and Storage, LLC ("White Dog") (Count VI). [*Id.* at 139–43]. Additionally, Shapira seeks a declaratory judgment declaring "rights and duties of the parties," specifically that Defendants must disclose the location of the barrels, their use to date, and planned future use (styled as Count VII) and injunctive relief to enforce the supply agreement (styled as Count VIII). [*Id.* at 144]. Prior to removal to this Court, Divine Spirits and White Dog were dismissed from this action on October 26, 2023, and September 1, 2023, respectively. [*Id.* at 3, 398, 535].

## II.    Discussion

Defendants move to (1) dismiss the complaint in its entirety because it "fails to state a claim on which relief can be granted" and (2) dismiss the complaint against Moix and Nevenglosky for lack of personal jurisdiction. [DE 10 at 565]. The Court turns first to whether it has personal jurisdiction over Moix and Nevenglosky, then to the individual claims.

### A.  Personal Jurisdiction

Under Fed. R. Civ. P. 12(b)(2), on a motion asserting lack of personal jurisdiction, the Court may (1) rule on the motion based on the pleadings and affidavits alone, (2) hold an evidentiary hearing on the motion, or (3) permit limited discovery on the motion. *Anwar v. Dow Chem. Co.*, 876 F.3d 841, 847 (6th Cir. 2017). The Court retains "considerable discretion" in selecting one of these three options. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Under Fed. R. Civ. P. 12(b)(2), the burden is on the plaintiff to show that jurisdiction is proper

once a defendant challenges personal jurisdiction. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). This burden is "relatively slight" where the district court rules without conducting an evidentiary hearing, the plaintiff must make only a *prima facie* showing of personal jurisdiction, and the Court does not weigh the controverting assertions of the party seeking dismissal. *Theunissen*, 935 F.2d, at 1458–59; *Anwar*, 876 F.3d at 847; *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). However, a plaintiff must show personal jurisdiction by preponderance of the evidence when there is an evidentiary hearing. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Put differently, when the Court decides the motion on the filings, the Court must view the pleadings and affidavits in a light most favorable to the plaintiff and not "weigh the controverting assertions of the party seeking dismissal." *Air Prod.*, 503 F.3d at 549 (citing *Theunissen*, 935 F.2d at 1459) (internal quotation omitted).

"When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a forum state court could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and internal quotation omitted).

Personal jurisdiction can be either general or specific. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). A court may assert general jurisdiction when the defendant's connections with the forum state are "so continuous and systematic as to render the defendant essentially at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotation omitted). In other words, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile" and the headquarters or principal place

of business for a corporation. *Bristol-Myers Squibb Co., v. Superior Court*, 582 U.S. 255, 262 (2017) (quoting *Goodyear*, 564 U.S. at 919). Personal jurisdiction is not an issue when general jurisdiction has been determined, even if all the incidents underlying the claim occurred in a different state. *Id*.

On the other hand, specific jurisdiction hinges on "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id*. For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Sullivan v. LG Chem., Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) (quoting *Goodyear*, 564 U.S. at 919). However, this standard is lenient, only requiring that the cause of action have a "substantial connection" to the defendant's activity and need not arise formally from the defendant's contacts. *Id*. Nonetheless, both the state long-arm statute and constitutional due process must be satisfied for specific jurisdiction to exist in a diversity case. *Id.*

Under Kentucky law, courts must follow a two-step analysis to exercise personal jurisdiction over non-resident defendants. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 56 (Ky. 2011). The first step determines whether "the cause of action arises from conduct or activity of the defendant that fits into one of the [long-arm] statute's enumerated categories." *Id*. The second step establishes whether exercising personal jurisdiction would offend the defendant's federal due process. *Id.* at 57. Only when a court has determined that the defendant's activities fit into one of the nine categories listed in KRS 454.210—Kentucky's long-arm statute—should the court proceed to the second step. *Id*. However, if the defendant's activities do not fit into one of the statute's nine enumerated categories, then "*in personam* jurisdiction may not be exercised,"

and the inquiry ends. *Id*. Thus, there is no need to decide whether the defendant's due process is offended if the defendant's activities do not meet the requirements of KRS 454.210.

Subsequently, the Due Process Clause requires that the plaintiff's claim "arises out of or relates to the defendant's contacts' with the forum [state]." *Sullivan*, 79 F.4th at 671 (quoting *Bristol-Myers*, 582 U.S. at 262). Furthermore, one must "purposefully avail" oneself to the forum state. *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012). In other words, "the case law requires deliberate acts by the defendant to establish the minimum contacts required to demonstrate purposeful availment." *Sullivan*, 79 F.4th at 673. Generally, this means that the defendant must have "fair notice" that it could be sued in the forum state. *See id*.

In this case, Defendants argue (1) Plaintiffs have not established general jurisdiction, (2) Plaintiffs' claims do not arise from Moix and Nevenglosky's contacts with Kentucky because any alleged contacts were that of Rare Character, not Moix and Nevenglosky personally, and (3) Moix and Nevenglosky "do not have the necessary minimum contacts" to satisfy due process. [DE 10 at 566–68]. Plaintiffs respond that the Court does have personal jurisdiction over Moix and Nevenglosky because (1) it comports with "traditional notions of fair play and substantial justice," (2) the claims arise out of their contacts with Kentucky, and (3) those contacts satisfy due process. [DE 11 at 622–28].

First, the Court agrees that it does not have general jurisdiction over Moix and Nevenglosky. Plaintiffs do not contest this argument. Second, the fact that Moix and Nevenglosky's contacts with Kentucky may have been on behalf of Rare Character does not prevent the Court from exercising personal jurisdiction over them as individuals. The Court can exercise jurisdiction over them as individuals—provided that the requirements of personal jurisdiction in Kentucky are satisfied—because it aligns with "traditional notions of fair play and

substantial justice[.]" *Walker v. PBI Bank, Inc.*, No. 2016-CA-000549-MR, 2017 WL 3951898, at *2 (Ky. Ct. App. Sept. 8, 2017) (quoting *Johnson v. Diamond Shine, Inc.*, 890 F.Supp.2d 763, 772 (W.D. Ky. 2012). *Walker* followed the Sixth Circuit's rejection of the "fiduciary shield doctrine" which "states that if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." *Id.* (quoting *Johnson*, 890 F.Supp.2d at 771–72) (cleaned up). Instead, *Walker* held that "[a]ctions by defendants 'undertaken in an official rather than personal capacity [do] not preclude the exercise of personal jurisdiction over those defendants,'" adopting the Sixth Circuit rule that "where an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice[.]" *Id.*

In their reply, Defendants argue that *Walker*—a case where "a New York resident signed a personal guaranty on a Kentucky originated loan"—does not apply, asserting that "[i]t is settled law that 'an officer, director, or shareholder, when acting as an agent of the corporation, is [] protected from personal liability when acting within his authority to bind the principal." [DE 12 at 735–36 (quoting *Young v. Vista Homes, Inc.*, 243 S.W.3d 352, 363 (Ky. App. 2007))]. *Young* does stand for this general proposition, but also noted the individual defendants in that case "could be liable for any *misrepresentations* which they personally made even though they are acting on behalf of [a corporation] at the time." 243 S.W.3d 352 at 364 (emphasis added).

Because the complaint only seeks to hold Moix and Nevenglosky individually liable for one count—fraudulent misrepresentation—the general principle articulated in *Young* does not apply here. Nearly all the allegations in Plaintiffs' complaint center on Moix and Nevenglosky's personal conduct, and because they can be held personally liable for fraudulent misrepresentation

even if that conduct was on behalf of Rare Character, the Court finds that they were "actively and personally involved in the conduct giving rise to the claim" and so the Court has personal jurisdiction over them. *See Walker*, 2017 WL 3951898, at *2.

### a. Kentucky Long-arm Statute

Turning to step one of the *Caesars Riverboat Casino* two-step inquiry, the Court finds that Plaintiffs' claims do arise from "conduct or activity of [Moix and Nevenglosky] that fits into one of the [long-arm] statute's enumerated categories." *Caesars Riverboat Casino*, 336 S.W.3d at 56. Defendants argue that this is wrong because Moix and Nevenglosky's conduct was that of Rare Character, and they cannot be "liable for the acts and omissions of the company." [DE 10 at 566]. As already discussed, Kentucky courts and the Sixth Circuit reject the "fiduciary shield" rule, therefore this argument fails. Plaintiffs correctly argue that the claims arise directly from Defendants "transacting business in the forum state." KRS 454.210(1). Plaintiffs make sufficient allegations that Defendants participated in "[m]aking telephone calls, texting, entering into contract negotiations, sending letters, [or] emailing" which are "all recognized means of transacting business in the forum state." [DE 11 at 624]; *H.E.B., LLC v. Jackson Walker, L.L.P.*, 587 S.W.3d 333, 341 (Ky. App. 2019) (citing *Hall v. Rag-O-Rama, LLC*, 359 F.Supp.3d 499, 509 (E.D. Ky. 2019)). As a result, step one is satisfied.

### b. Federal Due Process

Turning to step two, the Court finds the requirements of due process are satisfied. Here again, Defendants assert that jurisdiction over Moix and Nevenglosky cannot rest solely on their membership in Rare Character. [DE 10 at 567]. But Plaintiffs do not assert that the Court has personal jurisdiction over Moix and Nevenglosky only by virtue of their membership in Rare Character. Instead, the complaint alleges that Moix and Nevenglosky personally contacted

individuals and entities in Kentucky including Shapira, Bluegrass Bottling, White Dog, Divine Spirits, Heritage Distribution, and a real estate broker, and frequently visited Kentucky for business purposes. [DE 11 at 626]. As a result, the Court agrees with Plaintiffs' characterization that "a series of business dealings spanning multiple years, with numerous in-person visits to Kentucky are at the heart of this dispute." [DE 11 at 628]. Accordingly, the Court finds that the complaint alleges sufficient facts to establish "deliberate acts by the defendant to establish the minimum contacts required to demonstrate purposeful availment" and satisfy federal due process requirements. *Sullivan*, 79 F.4th at 673. Because both steps of the *Caesars Riverboat Casino* inquiry are satisfied in this case, the Court will not dismiss Moix and Nevenglosky for lack of personal jurisdiction. Plaintiffs' motion to dismiss for lack of personal jurisdiction is **DENIED**.

### B. Individual Claims

Defendants seek to dismiss the complaint in its "entirety." [DE 10 at 580]. As an initial matter, Defendants motion is based on "failure to state a claim upon which relief can be granted," citing Kentucky Rule of Civil Procedure 12.02(f). [*Id.* at 564–65]. But this action has been removed to federal court, so the federal pleading standard applies. *Brandenburg Tel. Co. v. Sprint Commc'ns Co., L.P.*, 658 F. Supp. 3d 427, 446 (W.D. Ky. 2023) (explaining that when a case is removed on the basis of diversity jurisdiction, state substantive law and federal procedural law apply) (quoting *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006) (citation omitted)). Accordingly, the Court applies Federal Rule of Procedure 12(b)(6).

Rule 12(b)(6) instructs that a court must dismiss a complaint if the complaint "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must

presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party.  *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted).  "But the district court need not accept a bare assertion of legal conclusions."  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation and quotations omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and quotations omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "A complaint will be dismissed . . . if no law supports the claim[s] made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561–64).

### a.   Count I – Breach of Contract

Defendants argue Count I should be dismissed because (1) it is barred by the statute of frauds and (2) it fails to allege the required elements of breach of contract.  [DE 10 at 568–69].  Plaintiffs disagree that the contract was not in writing and was not intended to be performed within a year.  [DE 11 at 628–31].  They also assert that the complaint identifies at least two projects that Rare Character had in progress, alleging all elements of breach of contract.  [*Id.* at 631].

First, it is true that a contract "that is not to be performed within one year from [its] making" must be in writing to be enforceable.  KRS 371.010(7).  And while Kentucky courts construe the writing requirement of the statute of frauds "loosely," that does not mean any form of writing referring to an agreement will do.  *See United Propane Gas, Inc. v. Pincelli & Assocs., Inc.*, No. 5:13-CV-190-TBR-LLK, 2015 WL 7431045, at *5 (W.D. Ky. Nov. 20, 2015) (quoting *United Propane Gas Inc. v. Pincelli & Associates Inc.*, No. 5:13-CV-00190-TBR, 2014 WL 496932, at *3 (W.D. Ky. Feb. 6, 2014).

While the revolving credit agreement between Rare Character and 7th Heaven was a written contract, it does not speak to the 25% commission that Shapira was allegedly supposed to receive for "assistance to projects already in place under the Rare Character umbrella[.]"  [DE 1-1 at 193; *see* DE 1-1 at 176–86].  The only writing in the record of any kind that references a 25% commission is an email from Nevenglosky to Moix and Shapira with the subject line "Structural proposal." [1]  [DE 1-1 at 434–37].  That email contains no text but attaches a chart with arrows indicating what appears to be compensation flowing toward "ALS LLC" described as "Based on a % of savings vs. Broker market [sic] up" and "Salary: Essentially 25% of profits."  [*Id.* at 436].  A second attached chart represents "Salary: Essentially 25% of profits," "'Opportunity Cost' Payment," and "SBS barrel sales bonuses" flowing toward 7th Heaven.  [*Id.* at 437].  Plaintiffs cite *United Propane Gas* for the proposition that this shows the contract was, in fact, in writing. 2015 WL 7431045, at *5.

---

[1] The Court may consider this email without converting to a motion for summary judgment because "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings." *Armengau v. Cline*, 7 F. App'x 336, 344–45 (6th Cir. 2001) (explaining a court runs afoul of Rule 12(b) only when it "looks beyond the pleadings and materials *appended to or incorporated in it by reference*" without converting to summary judgment) (emphasis added).

This case is different than *United Propane Gas*, however, because Plaintiffs attach no correspondence showing a discussion or approval of this "structural proposal." Therefore, unlike the emails in *United Propane Gas*—where two parties explicitly negotiated a price for a product and mutually assented in multiple replies to each other—the email from Nevenglosky constitutes an offer at best. *See id.* at *1–2. If, *arguendo*, there was an understanding between Shapira, Moix, and Nevenglosky that Shapira would receive a 25% commission, the email from Nevenglosky with the attached "structural proposal" charts could also only be construed as evidence of an *oral* agreement, not as a complete, separate written agreement in itself. *See, e.g.*, *Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009), *as modified* (Nov. 2, 2009) (holding checks without "references to the terms of the contract or a document that contains the terms" were not sufficient to form a written contract on their own). As Plaintiffs state in the complaint, an "Operation Agreement" memorializing the alleged understanding between Shapira, Moix, and Nevenglosky never materialized. [DE 1-1 at 116]. Accordingly, the Court cannot say that Plaintiffs have plausibly alleged there was a written contract granting Shapira a 25% commission.

Still, if the alleged agreement were meant to be performed within one year, it would not be subject to the statute of frauds. But here again, Plaintiffs fail to plausibly allege that the agreement was intended to be performed within one year. As Defendants argue, Plaintiffs allege that "a contractual relationship between Shapira and Rare Character already existed as of April 1, 2021" and that the agreement had been in effect longer than a year and had planned to continue longer than that. [DE 10 at 569]. As proof, Defendants point to facts pleaded by Plaintiff such as whiskey sourced by Shapira under the Supply Agreement being "scheduled to be bottled in the second quarter of 2023" and that Bluegrass Bottling, LLC had agreed to bottle bourbon from the supply agreement on April 4, 2023. [*Id.* at 569–70].

13

Count I is barred by the statute of frauds because the agreement was required to be in writing and Plaintiffs have not stated a plausible claim that it was. Accordingly, Defendants' motion to dismiss Count I is **GRANTED**.

        *b.  Count II – Unjust Enrichment*

Defendants argue that, because Count I is barred by the statute of frauds, so too is Plaintiffs' claim of unjust enrichment "based on that contract." [DE 10 at 572]. Alternatively, Defendants argue that the complaint fails to allege the elements of unjust enrichment. [*Id.*]. Plaintiffs respond that Count II is not dependent on whether Count I is barred by the statute of frauds, and that the complaint does allege all elements of unjust enrichment. [DE 11 at 631–33].

First, Defendants cite *Louisville Trust Co. v. Monsky*, 444 S.W.2d 120 (Ky. 1969) for the proposition that a plaintiff cannot "recover in equity" based on a contract barred by the statue of frauds. [DE 10 at 572]. Plaintiffs do not dispute the holding of that case but assert that it does not apply here because "to regard [*Monsky*] as a general proposition is an erroneous overstatement." *Buttorff v. United Elec. Lab'ys, Inc.*, 459 S.W.2d 581, 587 (Ky. 1970); [DE 11 at 631–32]. The Court agrees that Kentucky courts do not bar unjust enrichment claims as a matter of course when an agreement does not comport with the statute of frauds. *See Smith v. Williams*, 396 S.W.3d 296, 299–300 (Ky. 2012) ("Our case law recognizes exceptions, however, to the writing requirement of the statute of frauds—both actual fraud and equity."); *Thoro-Graph, Inc. v. Lauffer*, No. 2010-CA-000891-MR, 2012 WL 5038254, at *5 (Ky. Ct. App. Oct. 19, 2012) ("There is nothing to support the proposition that the existence of a statute of frauds forecloses recovery in *quantum meruit*."); *Betsy Wilson Realty, Inc. v. Green*, No. 2008-CA-002122-MR, 2009 WL 3400663, at *5 (Ky. Ct. App. Oct. 23, 2009) (holding that *Monsky* did not prohibit recovery of compensation due from plaintiff's real estate broker). But on the other hand, "where the statute of frauds is clear

14

and unambiguous . . . equitable relief should only be granted under the most limited of circumstances, lest the Court run afoul of judicially amending the statute in violation of separation of powers." *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 10 (Ky. 2005). At this stage in the litigation, the Court finds that Count II is not barred by the statute of frauds. Like *Buttorff*, if there were an agreement for a 25% commission, Plaintiffs plausibly allege Shapira at least partially performed on that agreement by sourcing bourbon for some Rare Character projects that pre-dated his business relationship with Moix and Nevenglosky.

The Court also finds that Plaintiffs have plausibly stated a claim for unjust enrichment. To do so, Plaintiffs must demonstrate (1) a benefit conferred on Defendants at their expense; (2) an appreciation of the benefit by Defendants; and (3) Defendants inequitably retained the benefit without payment for its value. *Bewley v. Heady*, 610 S.W.3d 352, 358 (Ky. App. 2020) (quoting *Furlong Dev. Co., LLC v. Georgetown-Scott Cty. Planning & Zoning Comm'n*, 504 S.W.3d 34, 39–40 (Ky. 2016)). Plaintiffs allege that Shapira not only sourced barrels for Fortuna Bourbon (where he had a 25% stake) but also for Rare Character (where he had no ownership stake). [DE 1-1 at 112]. Although the complaint alleges that all barrels obtained through Shapira's connections were funded by Rare Character either directly or through the revolving credit agreement with 7th Heaven, [*id.* at 112], and that revolving credit agreement has been paid off, [*id.* at 135], Shapira claims that his industry connections increased Rare Character's profit margins, decreased its costs, and enabled Rare Character's Exceptional Cast Series. [*Id.* at 108–09]. Defendants maintain that this does not plausibly show that they were unjustly enriched by not paying Shapira a 25% commission on sales that they allegedly agreed to. Instead, Defendants argue that Shapira benefitted from Fortuna Bourbon's sales through his ownership stake, and he was repaid with interest for the financing of Rare Character's supply pursuant to the revolving credit agreement.

But this argument does not account for the fact that Shapira, through FBC, supplied existing Rare Character projects that predated his involvement. For this reason, Plaintiffs plausibly state a claim of unjust enrichment, and the statute of frauds should not preclude the possibility of equitable relief. Defendants' motion on Count II is **DENIED**.

### c. *Count III – Breach of Contract*

Although Defendants do not specifically move for dismissal of Count III by name in their motion to dismiss, they discuss this breach of contract as "Count IV." [*See* DE 10 at 578–79]. Unlike Count I, this claim is pursuant to a written agreement: the supply agreement. Defendants argue that, because they were not a party to that contract, it is not binding on them. [DE 10 at 578]. The Court agrees. First, while the supply agreement provided that the whiskey from the supplier was to be used for Fortuna Bourbon and marketed as Kentucky bourbon, the parties to that agreement were FBC and a third-party distiller, not Rare Character. The complaint alleges that Rare Character moved barrels provided via the supply agreement to Indiana—without the permission of FBC or the supplier—directly violating the supply agreement. [DE 1-1 at 140–41]. Although this did violate a condition of the supply agreement between FBC and the third-party distiller, Rare Character was not a party to it and therefore cannot be liable for breaching the contract. *See Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 579 (Ky. 2004) ("[A]s a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach[.]") (citation omitted). Accordingly, Defendants' motion to dismiss Count III is **GRANTED**.

16

### d.   Count IV – Fraudulent Misrepresentation

Plaintiffs allege that Moix and Nevenglosky intentionally misled Shapira by promising to compensate him for his assistance with Rare Character's existing projects.  [DE 1-1 at 141].  This claim fails because, as Defendants correctly argue, "a misrepresentation to support an allegation of fraud must be made concerning a present or pre-existing fact, and not in respect to a promise to perform in the future."  [DE 10 at 574 (quoting *Filbeck v. Coomer*, 182 S.W.2d 641, 643 (Ky. 1944))]; *see also Kentucky Electric Development Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934) ("An accepted rule is, a misrepresentation, to be actional, must concern an existing or a past fact, and not a future promise, prophecy, or opinion of a future event, unless declarant falsely represents his opinion of a future happening.").  As such, Plaintiffs claim fails to plead the basic elements of fraudulent misrepresentation—demonstrating a material representation that Defendants knew to be false or made recklessly to induce Shapira to contribute to Rare Character. *See Yeager v. McLellan*, 177 S.W.3d 807, 809–10 (KY. 2005) (explaining the elements of a fraudulent misrepresentation are "a) a material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury").  The misrepresentation that Plaintiffs allege—that Moix and Nevenglosky misrepresented to Shapira their intent to compensate him—is plainly a promise to perform in the future.  Because this is not a present or pre-existing fact, Plaintiffs fail to state a claim at the first element of fraudulent misrepresentation, and so Defendants' motion to dismiss Count IV is **GRANTED**.

### e.   Count V – Breach of Fiduciary Duty

Defendants argue that Rare Character owes no fiduciary duty to 7th Heaven because Rare Character is not a member of 7th Heaven and the claim appears to be "based on an alleged

requirement under the Supply Agreement" where 7th Heaven, Fortuna Bourbon, Rare Character, and Moix and Nevenglosky were not parties. [DE 10 at 577]. Defendants are correct that, because there is no operating agreement in this case, Delaware law controls the obligations of Rare Character and Fortuna Bourbon as LLCs formed in Delaware. [*Id.* (citing Del. Code Ann. tit. 6, § 18-101, 18-106)]. Accordingly, 7th Heaven, as a member of Fortuna Bourbon, was entitled to receive information "for any purpose reasonably related to [its] interest as a member of the limited liability company." Del. Code Ann. tit. 6, § 18-305(a). But this Court cannot determine what information was "reasonably related" because the authority to make that determination is committed to the Delaware Court of Chancery by statute. Del. Code Ann. tit. 6, § 18-305(f).

As to the contractual obligations regarding the relocation of the barrels, the Court disagrees that Rare Character owed no fiduciary duty to Plaintiffs. Regardless of which entities were parties to the supply agreement, its potential violation could harm Fortuna Bourbon, and Plaintiffs are correct that "managing members of an LLC owe default duties of loyalty, care, and good faith to other members of the LLC." [DE 11 at 636 (citing *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 661 (Del. Ch. 2012)]. Plaintiffs assert that these duties extend to making "good faith efforts to ensure that the LLC fulfilled its contractual duty to its members." [*Id.* (citing *Metro Comm. Corp. BVI v. Advanced Mobilecomm Tech., Inc.*, 854 A.2d 121, 153 (Del. Ch. 2004))]. Those fiduciary duties would have not only extended to Fortuna Bourbon, which Plaintiffs allege Rare Character was the managing member of, but also to FBC because it was a separate entity formed for the sole purpose of supplying Fortuna Bourbon and Rare Character. [*Id.* (citing *Barbieri v. Swing-N-Slide Corp.*, 1997 WL 55956, *2–3 (Del. Ch. Jan. 29, 1997))]. While Fortuna Bourbon was not a party to the supply agreement, it is plausible that causing FBC's supply agreement to be damaged would have also damaged Fortuna Bourbon, as the amended complaint alleges. [DE 1-1 at 142]. Accordingly,

Plaintiffs have plausibly stated a claim for breach of fiduciary duty as it relates to the actual relocating of the barrels, but not for withholding information about the barrels. Defendants' motion to dismiss Count V is **DENIED**.

### f.   Counts VII and VIII – Declaratory Judgment and Injunctive Relief

In their complaint, Plaintiffs style certain relief they seek as "Count VII" and "Count VIII." These are not separate claims so much as types of relief that Plaintiffs seek based on other claims in the amended complaint. In any event, both are precluded by the Court's rulings in this order. First, Plaintiffs seek a declaration of their right to know information about the location of the bourbon barrels sourced by the supply agreement. But as the Court has already explained, that power is expressly committed to the Delaware Court of Chancery. Del. Code Ann. tit. 6, § 18-305(f). Second, Plaintiffs seek injunctive relief pursuant to a breach of the supply agreement. Because the Court will dismiss both claims for breach of contract, injunctive relief cannot be warranted based on those claims. As such, Defendants motion to dismiss Count VII and Count VIII is **GRANTED**.

### III.   Conclusion

For the reasons explained, and the Court being otherwise sufficiently advised, Defendants motion to dismiss is **GRANTED** in part and **DENIED** in part. Accordingly, it is **ORDERED** that:

1. Counts I, III, IV, VII, and VIII of the amended complaint are **DISMISSED**.

2. Counts II and V remain pending.

March 18, 2024

Rebecca Grady Jennings, District Judge
United States District Court

cc: counsel of record

19