UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANDREW SHAPIRA, *et al*.,

      PLAINTIFFS,

v.

RARE CHARACTER WHISKEY CO., LLC,
*et al.*,

      DEFENDANTS.

CIVIL ACTION NO. 3:23-CV-602-RGJ

## RARE CHARACTER WHISKEY CO., LLC's ANSWER AND COUNTERCLAIM

Defendant, Rare Character Whiskey Co., LLC,[1] states as follows for its answer to the remaining claims in Plaintiffs' amended complaint, states as follows.

### Nature of the Action

1.     Rare Character denies the allegations in this paragraph.

2.     Rare Character denies the allegations in this paragraph.

### Parties

3.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and so they are deemed denied.

4.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph 4 and so they are deemed denied.

---

[1] Counts IV (fraudulent misrepresentation) and VIII (injunctive relief) of the amended complaint, against Rare Character, Moix, and Nevenglosky, were dismissed by Order entered on March 18, 2024 (Doc. 16); and although the Court found that personal jurisdiction exists over Defendants Moix and Nevenglosky, there are no claims remaining against these Defendants. Therefore, this answer is responsive for the only remaining Defendant, Rare Character Whiskey, Co., LLC.

5.      Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph 5 and so they are deemed denied.

6.      Rare Character admits the allegations in this paragraph.

7.      Rare Character admits the allegations in this paragraph.

8.      Rare Character admits the allegations in this paragraph.

9.      Rare Character admits the allegations in this paragraph.

10.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

11.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

**Jurisdiction and Venue**

12.     Rare Character does not dispute that venue, however, denies the allegations in this paragraph.

13.     Rare Character does not dispute jurisdiction, however, denies the allegations in this paragraph.

**Factual Allegations**

14.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

15.     Rare Character admits that Moix and Shapira had been acquaintances for many years, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and so they are deemed denied.

16.     Rare Character admits that Moix reached out to Shapira in late 2019 with regard to the possibility of creating a business, but denies the remaining allegations in this paragraph.

17.     Rare Character admits that Moix's business was impacted by the pandemic, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations with regard to how the pandemic impacted Shapira.  Rare Character denies the remaining allegations in this paragraph.

18.     Rare Character admits the allegations in this paragraph.

19.     Rare Character admits that Moix has experience as an expert in the restaurant business, and that Nevenglosky has experience in developing premium spirit brands and a background in marketing, but denies the remaining allegations in this paragraph.

20.     Rare Character admits the allegations in the first two sentences but denies the remaining allegations in this paragraph.

21.     Rare Character admits that Moix and Nevenglosky proposed that Rare Character and Shapira join together to form a new entity, Fortuna Bourbon LLC (a Delaware entity), but denies the remaining allegations in this paragraph.

22.     Rare Character denies the allegations in this paragraph.

23.     Rare Character denies the allegations in this paragraph.

24.     Rare Character admits that it owns all trademark rights to the name "Fortuna Bourbon Whiskey" and other denies the remaining allegations in this paragraph.

25.     Rare Character denies the allegations in this paragraph, including subparts (a) through (f).

26.     Rare Character responds as follows to the subparts in this paragraph, with regard to the structure of Fortuna Bourbon LLC:

    (a)    Rare Character admits that a Delaware limited liability company was formed named Fortuna Bourbon LLC, 25% owned by 7th Heaven, LLC and 75% owned by Rare Character, and otherwise denies the remaining allegations in subpart (a).

    (b)    Rare Character denies the allegations in subpart (b).

    (c)    Rare Character admits that it would provide the capital funds necessary to purchase whiskey barrels and other start-up costs, but denies the remaining allegations in subpart (c).

    (d)    Rare Character admits that Shapira agreed to provide aged barrels as his capital contribution to Fortuna Bourbon LLC and denies the remaining allegations in subpart (d).

    (e)    Rare Character denies the allegations in subpart (e).

    (f)    Rare Character admits that the Fortuna Bourbon Whiskey relaunch was expected to generate significant cash flow and profit for Fortuna Bourbon LLC, affirmatively pleads that Shapira intentionally interfered with the relaunch and the business relationships of Fortuna Bourbon, LLC and Rare Character, and otherwise denies the remaining allegations in subpart (f).

    (g)    Rare Character denies the allegations in subpart6 (g).

    (h)    Rare Character denies the allegations in subpart (h).

    (i)    Rare Character denies the allegations in subpart (i).

    (j)    Rare Character denies the allegations in subpart (j).

27.    Rare Character admits that Moix, Nevenglosky, and Shapira discussed the structure of Fortuna Bourbon, LLC, and otherwise denies the allegations in this paragraph.

28.    Rare Character denies the allegations in this paragraph.

29.    Rare Character admits the allegations in this paragraph.

30.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

31.     Rare Character denies the allegations in this paragraph.

32.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

33.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

34.     Rare Character admits that Shapira organized and is the sole member of Fortuna Bourbon Company, LLC, a single member Kentucky limited liability company, on April 1, 2022, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and so they are deemed denied.

35.     Rare Character admits that Fortuna Bourbon Company, LLC, (a Kentucky limited liability company) thru Shapira, entered into a Supply Agreement with a distiller to benefit Fortuna Bourbon LLC (a Delaware limited liability company) on April 1, 2022, refers to that Agreement for its contents and denies any allegations inconsistent with its terms.  Rare Character otherwise denies the allegations in this paragraph.

36.     Rare Character refers to the Supply Agreement for its terms and denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

37.     Rare Character refers to the Supply Agreement for its terms and denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

38.     Rare Character refers to the Supply Agreement for its terms and denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

39.     Rare Character admits the allegations in the first sentence in this paragraph, but denies the remaining allegations.

40.     Rare Character refers to the label referenced for its terms and denies any allegations inconsistent with those terms.

41.     Rare Character admits that barrels acquired under the Supply Agreement were sent to Bluegrass Bottling, LLC, but denies the remaining allegations in this paragraph.

42.     Rare Character admits the allegations in this paragraph.

43.     Rare Character denies the allegations in this paragraph.

44.     Rare Character refers to the press release referenced in this paragraph and denies any allegations inconsistent.  Rare Character otherwise denies the remaining allegations.

45.     Rare Character denies the allegations in this paragraph.

46.     Rare Character denies the allegations in this paragraph.

47.     Rare Character admits that Shapira, through 7th Heaven provided a $1 million short-term line of credit to Rare Character in December 2022, but denies the remaining allegations in this paragraph.

48.     Rare Character denies the allegations in this paragraph.

49.     Rare Character denies the allegations in this paragraph.

50.     Rare Character denies the allegations in this paragraph.

51.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

52.     Rare Character admits that Shapira arranged for an agreement with MPG for Rare Character was to purchase a certain number of barrels from MPG, but denies the remaining allegations in this paragraph.

53.     Rare Character refers the to the terms and conditions and of the agreement between MPG and Rare Character, denies all allegations inconsistent with those terms and otherwise denies the allegations in this paragraph.

54.     Rare Character denies the allegations in this paragraph.

55.     The allegations in this paragraph contain screenshots of text communications. Rare Character refers to the totality of those communications, denies any allegations inconsistent with the communications, and otherwise denies the allegations in this paragraph.

56.     Rare Character denies the allegations in this paragraph.

57.     Rare Character denies the allegation in this paragraph.

58.     Rare Character admits that 7th Heaven provided funding to Rare Character through a Revolving Credit Agreement dated December 16, 2022, refers to that agreement for its terms and denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

59.     Rare Character denies the allegations in this paragraph.

60.     Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding Shapira's communications with third parties.  Rare Character otherwise denies the allegations in this paragraph.

61.     Rare Character denies the allegations in this paragraph.

62.     Rare Character denies the allegations in this paragraph.

63.     The allegations in this paragraph refer to screenshots of emails.  Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

64.     Rare Character denies the allegations in this paragraph.

65.     The allegations in this paragraph refer to screenshots of emails.  Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

66.     The allegations in this paragraph refer to screenshots of emails drafted by Shapira. Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

67.     The allegations in this paragraph refer to screenshots of emails.  Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

68.     Rare Character denies the allegations in this paragraph.

69.     Rare Character denies the allegations in this paragraph.

70.     Rare Character denies the allegations in this paragraph.

71.     Rare Character denies the allegations in this paragraph.

72.     Rare Character denies the allegations in this paragraph.

73.     The allegations in this paragraph refer to emails.  Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

74.     The allegations in this paragraph refer to emails.  Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

75.     Rare Character denies the allegations in this paragraph.

76.     Rare Character denies the allegations in this paragraph.

77.     Rare Character denies the allegations in this paragraph.

78.     Rare Character denies the allegations in this paragraph.

79.     Rare Character admits that Shapira made inquiries to Moix and Nevenglosky about obtaining updates on orders, but denies any characterization of those communications, or any wrongdoing in connection with Shapira's request for information.  Rare Character otherwise denies the remaining allegations.

80.     Rare Character denies the allegations in this paragraph and affirmatively states that Shapira intentionally interfered with the business relationship between Rare Character and Bluegrass.

81.     Rare Character denies the allegations in this paragraph and affirmatively states that Shapira intentionally interfered with the business relationship between Rare Character and Bluegrass.

82.     Rare Character denies the allegations in this paragraph.

83.     Rare Character denies the allegations in this paragraph and affirmatively states that Shapira intentionally interfered with the business relationship between Rare Character and Bluegrass.

84.     Rare Character denies the allegations in this paragraph and affirmatively states that Shapira intentionally interfered with the business relationship between Rare Character and Bluegrass.

85.     Rare Character denies the allegations in this paragraph.

86.     Rare Character denies the allegations in this paragraph.

87.     Rare Character denies the allegations in this paragraph.

88.     Rare Character denies allegations in this paragraph.

89.     Rare Character denies the allegations in this paragraph.

90.    Rare Character denies the allegations in this paragraph.

91.    Rare Character denies the allegations in this paragraph.

92.    The allegations in this paragraph refer to emails. Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

93.    Rare Character denies the allegations in this paragraph.

94.    Rare Character denies the allegations in this paragraph.

95.    The allegations in this paragraph refer to emails. Rare Character refers to the totality of those emails for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

96.    Rare Character denies the allegation in this paragraph.

97.    Rare Character admits that Shapira interfered with the business relationship with Bluegrass, that Rare Character conveyed those concerns to Bluegrass, and otherwise denies allegations in this paragraph.

98.    Rare Character denies the allegations in this paragraph.

99.    Rare Character denies the allegation in this paragraph.

100.    Rare Character denies the allegations in this paragraph.

101.    Rare Character admits that Shapira terminated Fortuna and/or Rare Character from acquiring barrels under the 7th Heaven Supply Agreement and otherwise denies the allegations of this paragraph.

102.    Rare Character denies the allegations of this paragraph.

103.    Rare Character denies the allegations of this paragraph.

104.    The allegations in this paragraph are based on written documents.  Rare Character refers to the letter referenced, for its terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations of this paragraph.

105.    Rare Character admits that it, through counsel, provided to Shapira a December 2022 balance sheet, as well as accounts payable and accounts receivable statements for January 1, 2023 through March 31, 2023, and otherwise denies the allegations of this paragraph.

106.    The allegations in this paragraph are based on written documents.  Rare Character refers to those documents for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations of this paragraph.

107.    The allegations in this paragraph are based on written documents.  Rare Character refers to the letter referenced, for its terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations of this paragraph.

108.    The allegations in this paragraph are based on written documents.  Rare Character refers to the letter referenced, for its terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations of this paragraph.

109.    Rare Character admits that it paid-off in full the Revolving Credit Agreement, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and so they are deemed denied.

110.    Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph and so they are deemed denied.

111.    The allegations in this paragraph are based on written documents.  Rare Character refers to the letter referenced, for its terms, and denies any allegations inconsistent with those terms.

112.     Rare Character denies the allegations in this paragraph.

113.     Rare Character admits that financial information was sent to Shapira and otherwise denies the allegations in this paragraph.

114.     Rare Character refers to the email referenced in this paragraph, for its contents, denies any allegations inconsistent with those contents, and otherwise denies the allegations in this paragraph.

115.     Rare Character admits that financial information was sent to Shapira and otherwise denies the allegations in this paragraph.

116.     Rare Character admits that Shapira intentionally and directly interfered with business relationships by contacting bottlers and other business relationships of Rare Character and otherwise denies the allegations in this paragraph.

117.     The allegations in this paragraph are based on written communications to which Rare Character refers for their terms, and denies any allegations inconsistent with those terms. Rare Character otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

118.     Rare Character admits that Shapira intentionally and directly interfered with the business relationship between Rare Character and Divine Spirits and otherwise denies the allegation in this paragraph.

119.     The allegations in this paragraph are based on written communications to which Rare Character refers for their terms, denies any allegations inconsistent with those terms, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

120.    Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

121.    Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

122.    Rare Character lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and so they are deemed denied.

123.    The allegations in this paragraph are conclusions of law and require no response. To the extent a response is required, Rare Character denies the allegations in this paragraph.

124.    The allegations in this paragraph are based on documents to which Rare Character refers for their terms, denies any allegations inconsistent with those terms, and otherwise denies the allegations in this paragraph.

125.    Rare Character denies the allegations in this paragraph.

126.    Rare Character denies the allegations in this paragraph.

127.    Rare Character denies the allegations in this paragraph.

## CAUSES OF ACTION

### Count I- Breach of Contract Against Rare Character

128.    Rare Character incorporates its responses to all previous allegations.

129.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

130.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

131.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

132.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

133.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract

(Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

### COUNT II - Unjust Enrichment Against Rare Character

134.    Rare Character incorporates its responses to all previous allegations.

135.    Rare Character denies the allegations in this paragraph.

136.    Rare Character denies the allegations in this paragraph.

137.    Rare Character denies the allegations in this paragraph.

138.    Rare Character denies the allegations in this paragraph.

139.    Rare Character denies the allegations in this paragraph.

### COUNT III - Breach of Contract Against Rare Character

140.    Rare Character incorporates its responses to all previous allegations.

141.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

142.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII),

and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

143.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

144.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

145.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

146.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

### COUNT IV - Fraudulent Misrepresentation Against
### Rare Character, Moix and Nevenglosky

147.    Rare Character incorporates its responses to all previous allegations.

148.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

149.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

150.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

151.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

152.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

**COUNT V - Breach of Fiduciary Duty Against Rare Character**

153.    Rare Character incorporates its responses to all previous allegations.

154.    The allegations contained in this paragraph are conclusions of law and require no response. To the extent a response is required, Rare Character denies the allegations in this paragraph.

155.    Rare Character denies the allegations in this paragraph.

156.    Rare Character denies the allegations in this paragraph.

157.    Rare Character denies the allegations in this paragraph.

158.    Rare Character denies the allegations in this paragraph.

159.    Rare Character denies the allegations in this paragraph.

160.    Rare Character denies the allegations in this paragraph.

161.    Rare Character denies the allegations in this paragraph.

**COUNT VI - Aiding and Abetting Breach of Fiduciary Duty
Against Divine Spirits and White Dog**

162.    Rare Character incorporates its responses to all previous allegations.

163.    The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

164.    The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

165.    The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

166.     The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

167.     The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

168.     The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

169.     The allegations in this paragraph are directed at parties other than Rare Character, that have been dismissed from this action, and no response from Rare Character is required.  To the extent a response is required from Rare Character, Rare Character denies the allegations.

### COUNT VII - Declaratory Judgment

170.     Rare Character incorporates its responses to all previous allegations.

171.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

172.     Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII),

and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs

have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in

this paragraph.

### COUNT VIII - Injunctive Relief

173.    Rare Character incorporates its responses to all previous allegations.

174.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in

part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract

(Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII),

and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs

have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in

this paragraph.

175.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in

part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract

(Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII),

and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs

have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in

this paragraph.

176.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in

part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract

(Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII),

and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs

have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

177.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

178.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

179.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is

required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

180.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

181.    Pursuant to its Opinion and Order entered March 18, 2024, the Court granted, in part, Defendants' motion to dismiss, and dismissed Plaintiffs' claims for breach of contract (Counts I and III), fraudulent misrepresentation (Count IV), declaratory judgment (Count VII), and injunctive relief (Count VIII).  Counts V and VI are asserted against parties whom Plaintiffs have voluntarily dismissed from this action.  Accordingly, no response to this paragraph is required.  To the extent a further response is required, Rare Character denies the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

1.    Plaintiffs fails to state a claim against Rare Character upon which relief can be granted.

2.    Plaintiffs did not incur any cognizable damages because of the alleged conduct of Rare Character.

3.    Any alleged damages are barred or limited to the extent that they arose from action by individuals or entities over whom Rare Character had no control or responsibility.

4.      Plaintiffs' claims are barred, in whole or in part, to the extent that any alleged claim or loss arises from his own actions, omissions, or other conduct.

5.      Rare Character reserves the right to assert any other or additional affirmative defenses that may become available as revealed in the course of discovery.  Rare Character also reserves the right to supplement, withdraw, or amend any affirmative defense(s) as may become necessary.

WHEREFORE, Rare Character prays that:

(A) Judgment be rendered in its favor and against Plaintiffs on Plaintiffs' complaint;

(B) Rare Character be awarded its reasonable attorneys' fees and costs; and

(C) Rare Character be awarded any and all other relief at law or in equity to which it is entitled.

## RARE CHARACTER WHISKEY CO., LLC's COUNTERCLAIM AGAINST ANDREW SHAPIRA

Rare Character Whiskey Co., LLC, by counsel, states as follows for its counterclaim against Plaintiff/Counterclaim Defendant, Andrew Shapira:

### Parties, Jurisdiction, and Venue

1.      Rare Character Whiskey Co., LLC is a Delaware limited liability company with its principal place of business in Las Vegas, Nevada.

2.      Upon information and belied, Plaintiff/Counterclaim Defendant, Andrew Shapira, resides in Jefferson County, Louisville, Kentucky.

3.      Venue and jurisdiction over Rare Character's Counterclaim are proper in this Court because Plaintiff/Counterclaim Defendant's actions and omissions arise out of the same transaction or occurrence that is the subject matter of Plaintiff/Counterclaim Defendant's claim,

and the parties are diverse and the amount in controversy exceeds the jurisdictional limit of this Court.

## Facts

4.    Andrew Shapira is a member of the Shapira family.

5.    Pablo Moix and Peter Nevenglosky each own a 33% interest in Rare Character.

6.    Friends at one time, Moix and Shapira, alongside Nevenglosky, decided to join in a business venture aimed at revitalizing the Fortuna brand—a bourbon brand that shut down in the 1960s—and created Fortuna Bourbon LLC ("Fortuna Bourbon").

7.    Fortuna Bourbon was formed in Delaware on April 1, 2022.  Rare Character Whiskey holds a 75% interest and 7th Heaven LLC (whose sole member is Shapira) holds a 25% interest.

8.    Fortuna Bourbon Company, LLC ("FBC") is a Kentucky company formed by Shapira, also on April 1, 2022, and has no legal connection to Fortuna Bourbon LLC.  Shapira is the sole member of FBC.

9.    Shapira is not an owner of, and holds no interest in, Rare Character.

10.    Although Fortuna Bourbon did not have a written operating agreement, its members agreed, orally, to certain terms:  Rare Character would provide the capital funds necessary to purchase barrels of whiskey and initial start-up costs, and 7th Heaven, through Shapira, would facilitate access to aged barrels of whiskey.

11.    The parties intended that Fortuna Bourbon would enter into a supply agreement with a bourbon distiller to supply bourbon barrels for Fortuna Bourbon.

12.    Instead, on April 1, 2022, Shapira unilaterally formed FBC and caused FBC to enter into that supply agreement with a bourbon distiller, through which Shapira sourced barrels of whiskey for Fortuna Bourbon.

13.     As a result, Shapira intentionally placed himself as the decision-maker as to whether bourbon would be supplied to Fortuna Bourbon through the supply agreement.

14.     Shapira sought ways to insert himself into Rare Character's business by, among other things, misrepresenting the nature of his relationship to Rare Character to bourbon suppliers and bottlers, and falsely holding himself out as a "co-founder" of Rare Character.

15.     Despite having only 25% ownership interest in Fortuna Bourbon, Shapira sought to control all aspects of the business and wanted all decisions to go through him.  He threatened to "take [his] whiskey away" when Moix and Nevenglosky made decisions that were not in line with what Shapira wanted.

16.     Soon after the formation of Fortuna Bourbon, and because Shapira did not get his desired stake in Rare Character or the level of control that he wanted in Fortuna Bourbon, and because of Shapira's other improper actions and erratic behavior, the relationship between Shapira and Rare Character's members, Moix and Nevenglosky, began to deteriorate.

17.     In May 2022, Shapira told Moix and Nevenglosky that he should be the one to do all the marketing and sales for Fortuna Bourbon because he was "someone that worked at a major supplier and was de facto head of sales," and that it was "insulting" to Shapira that he was not in charge.

18.     Although Shapira's role in Fortuna Bourbon was to source bourbon barrels for the business, when he did not get the level of control in the business that he wanted or a stake in Rare Character, he threatened Moix and Nevenglosky to cut off supply to bourbon barrels.

19.     In July and August 2022, Shapira threatened to quit working for Fortuna Bourbon.

20.     On December 16, 2022, 7th Heaven (through Shapira) made a loan to Rare Character under a Revolving Credit Agreement.  Later, Shapira told Moix and Nevenglosky that

certain financial decisions of Fortuna Bourbon were being "discussed" without him and he demanded that Rare Character repay the loan immediately.

21.     On March 21, 2023, Shapira told Nevenglosky: "You are no longer talking to distributors unless I know about it."  A few days later, he threatened Nevenglosky again, saying "You're done in this industry."  Then finally, in April 2023, he instructed the supplier under the Supply Agreement that "No whiskey is allowed to be ordered by Rare Character."

22.     At this point, Shapira had gained access to sensitive information about Rare Character's business, including information about Rare Character's bourbon distributors, bottlers, and other aspects of Rare Character's business, which Shapira used to interfere with the business relationships held by Rare Character.

23.     Shapira intentionally acted to disrupt and interfere with Rare Character's contractual relationships and prospective contractual relationships for bottling, distribution, and sales.

24.     In each instance, Shapira was aware of the existence of a contract or the prospective contractual relationship, intended to either cause a breach of a contract or intended to interfere with the prospective contractual relationship, intentionally acted to in furtherance of causing a breach or interference, caused damages to Rare Character by doing so, and had no privilege or justification to excuse his conduct.

25.     Shapira contacted bottlers with whom Rare Character had existing contracts, and made false and disparaging statements about Rare Character's: (1) financial status, that it was financially unstable and unable to pay debts; (2) its ability to produce bourbon, that Rare Character had no inventory to be bottled; and, (3) the integrity of its business, that Nevenglosky

and Moix were not trustworthy—all in an effort to persuade the bottlers to cease doing business with Rare Character.

26.    The statements made by Shapira to bottlers about Rare Character and its members were false.

27.    In furtherance of his scheme, in or around June 2023, Shapira instructed his counsel to send letters to certain bottlers and bourbon barrel holders with whom Rare Character had contractual relationships for bottling and storing Rare Character's bourbon, demanding information—to which Shapira was not entitled—about the use and location of bourbon purchased by, and for, Rare Character.

28.    On June 25, 2023, Shapira's counsel sent a demand letter to Smart & Associates, LLC d/b/a Heritage Wine & Spirits, improperly seeking to obtain information about the use and location of bourbon purchased by, and for, Rare Character.  *See* **Exhibit A**.

29.    On June 26, 2023, Shapira's counsel sent identical or nearly identical demand letters to White Dog Trading and Storage, LLC and Divine Spirits, LLC.  *See* **Exhibits B & C**.

30.    On June 27, 2023, Shapira's counsel sent an identical or nearly identical demand letter to Bluegrass Bottling, LLC.  *See* **Exhibit D**.

31.    When Shapira did not receive the demanded information from White Dog and Divine Spirits, he filed this lawsuit against them to extort the information he wanted.

32.    Shapira later dismissed White Dog and Divine Spirits from this lawsuit, after achieving his desired result: obtaining information about Rare Character's business (to which he was not entitled), and suspending Rare Character's ability to bottle and sell bourbon.

33.    As a result of Shapira's intentional interference with Rare Character's existing contractual relationship with White Dog and Divine Spirits, Rare Character was unable to bottle

and sell the bourbon held by these bottlers for a period of over five months, which caused significant financial harm to Rare Character.

34.    Furthermore, Shapira's intentional interference with Rare Character's contractual relationship with Bluegrass Bottling destroyed the relationship and caused Bluegrass to breach the contract with Rare Character.

35.    Rare Character was unable to bottle and sell most of its bourbon that was being held by Bluegrass for a period of over five months, which caused Rare Character significant financial harm.  Rare Character was later able to relocate some, but not all, of the bourbon being held by Bluegrass, at a significant expense.

36.    Shapira continued his interference by spreading false and disparaging statements about Rare Character's: Rare Character's: (1) financial status, that it was financially unstable and unable to pay debts; (2) its ability to produce bourbon, that Rare Character had no inventory to be bottled; and, (3) the integrity of its business, that Nevenglosky and Moix were untrustworthy—all in an effort to persuade the distributors to cease doing business with Rare Character, including but not limited to Republic National Distribution Company, Allied Beverage New Jersey, M.S. Walker, Moon Distributors, and Martignetti.

37.    Shapira also falsely told these distributors also that Rare Character had stolen money from Shapira and urged these distributors to cease doing business with Rare Character.

38.    The statements made by Shapira to these distributors about Rare Character and its members were false.

39.    As a result of Shapira's intentional interference with Rare Character's bourbon distributors, some or all of the distributors temporarily ceased doing business with Rare

Character, causing significant delays in the distribution and sale of Rare Character's bourbon, which financially harmed Rare Character.

40.     Shapira contacted merchants with whom Rare Character was doing business, spreading false statements and disparaging Rare Character's business.

41.     Total Wine, one of the largest spirits merchants in the country and Rare Character's largest merchant, was one of the merchants contacted by Shapira.  Shapira told Total Wine similar lies about Rare Character that he had told to Rare Character's distributors and bottlers.

42.     As a result of Shapira's intentional interference with the contractual relationship between Total Wine and Rare Character, Rare Character was unable to continue selling its bourbon through Total Wine for several months, including to key accounts of Rare Character, causing significant financial harm to Rare Character.

## COUNT I
## Tortious Interference with Business or Contractual Relations

43.     Rare Character re-alleges and incorporates each of the prior paragraphs as if set forth fully herein.

44.     Rare Character had existing contractual relationships with bourbon bottlers, distributors, and merchants, as follows: Smart & Associates, LLC d/b/a Heritage Wine & Spirits; White Dog Trading and Storage, LLC; Divine Spirits, LLC; Bluegrass Bottling, LLC; Republic National Distribution Company; Allied Beverage New Jersey; M.S. Walker;  Moon Distributors; and, Martignetti.

45.     Shapira had knowledge of Rare Character's contractual relationships with these bourbon bottlers, distributors, and merchants.

46.     Shapira intentionally interfered, absent justification, with Rare Character's contractual relationships by consciously disparaging, and making false statements about, Rare Character's business and its members to bourbon bottlers, suppliers, and merchants.

47.     Shapira, without justification, intentionally interfered with Rare Character's contractual relationships with the bottlers, distributors, and merchants detailed above, including by misrepresenting Rare Character's: (1) financial status; (2) ability to produce bourbon; and, (3) the integrity of its business, by sending letters from his counsel misrepresenting the nature of the parties relationships and contractual obligations, and filing a lawsuit against Divine Spirits and White Dog to obtain information from these entities about Rare Character, to which Shapira was not otherwise entitled, and otherwise to disrupt Rare Character's relationship with these entities.

48.     As a direct and proximate result of Shapira's intentional conduct, Rare Character's contractual relationships with bottlers, distributors, and merchants suffered or ended.

49.     As a result of Shapira's interference, Rare Character suffered harm by the delay in bottling, distributing, and selling its bourbon in the market.

50.     Rare Character is entitled to recover from Shapira all damages resulting from Shapira's tortious interference, including punitive damages, in an amount to be determined at trial.

## COUNT II
### Tortious Interference with Prospective Economic Advantage

51.     Rare Character re-alleges and incorporates each of the prior paragraphs as if set forth fully herein.

52.     Rare Character had a reasonable probability of a business opportunity, and/or an economic advantage from doing business, with certain bourbon bottlers, distributors, and merchants, as detailed above.

53.     Shapira intentionally interfered, absent justification, with Rare Character's business opportunities and/or economic advantage by consciously disparaging, and making false statements about, Rare Character's business and its members to bourbon bottlers, suppliers, and merchants, as detailed above, causing these bottlers, suppliers, and merchant to either entirely or temporarily cease doing business with Rare Character, including, but not limited to: Smart & Associates, LLC d/b/a Heritage Wine & Spirits; White Dog Trading and Storage, LLC; Divine Spirits, LLC; Bluegrass Bottling, LLC; Republic National Distribution Company; Allied Beverage New Jersey; M.S. Walker;  Moon Distributors; and, Martignetti.

54.     Shapira, without justification, intentionally interfered with Rare Character's business opportunities and/or economic advantage with the bottlers, distributors, and merchants detailed above, including by misrepresenting Rare Character's: (1) financial status; (2) ability to produce bourbon; and, (3) the integrity of its business, by sending letters from his counsel misrepresenting the nature of the parties relationships and contractual obligations, and filing a lawsuit against Divine Spirits and White Dog to obtain information from these entities about Rare Character, to which Shapira was not otherwise entitled, and otherwise to disrupt  Rare Character's relationship with these entities.

55.     Shapira's conduct was a significant factor in Rare Character's loss of business opportunities with bottlers, distributors, and merchants, and/or Rare Character's loss of economic advantage.

56.     As a direct and proximate cause of Shapira's intentional interference, Rare Character has been harmed, suffered damages, and continues to suffer damages.

57.     Rare Character is entitled to recover from Shapira all damages resulting from Shapira's tortious interference, including punitive damages, in an amount to be determined at trial.

WHEREFORE, Rare Character demands:

(A)  A trial by jury on all issues so triable;

(B)  An award of actual and punitive damages and a judgment against Andrew Shapira;

(C)  Pre- and post-judgment interest;

(D)  All reasonable attorneys' fees and costs incurred herein; and

(E)  All other relief which the Court may deem just and proper.

Respectfully submitted,

*/s/ Alisa Micu*
Ian T. Ramsey
Alisa Micu
STITES & HARBISON PLLC
400 West Market Street, Suite 1800
Louisville, KY  40202-3352
Telephone:  (502) 587-3400
E-mail: iramsey@stites.com
          amicu@stites.com

*Counsel for Defendant, Rare Character*
*Whiskey Co., LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing electronically filed document was served via the Court's CM/ECF system or by email on this 19th day of April, 2024 upon:

John D. Cox
LYNCH COX GILMAN &
GOODMAN, PSC
500 West Jefferson Street, Suite 2100
Louisville, KY 40202
E-mail:  jcox@lynchcox.com
*Counsel for Plaintiffs*

Brian Haara
FULTZ MADDOX DICKENS
101 S. Fifth Street, 27th Floor
Louisville, Kentucky 40202
Telephone:  (502) 588-2029
E-mail:  bhaara@fmdlegal.com
*Counsel for Fortuna Bourbon, LLC*


*/s/ Alisa Micu*
Counsel for Defendant, Rare Character
Whiskey Co., LLC