UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ANDREW SHAPIRA, *et al.* Plaintiffs

v. Civil Action No. 3:23-cv-602-RGJ

RARE CHARACTER WHISKEY CO., LLC, *et al.* Defendants

* * * * *

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on the Application for Attorneys' Fees and Costs in Connection with the Order Accepting Report and Recommendation ("Fee Application") [DE 69] filed by Plaintiffs, Andrew Shapira ("Shapira"), 7th Heaven, LLC ("7th Heaven"), and Fortuna Bourbon Company, LLC ("FBC") (collectively, "Plaintiffs"). Stites & Harbison LLP ("Stites & Harbison") responded [DE 72] and Plaintiffs replied [DE 73]. This matter is ripe for adjudication. For the reasons below, Plaintiffs' fee application [DE 69] is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

For judicial economy, the Court will incorporate the background section from its previous order. [DE 67 ("Order Accepting")]. In that order, the Court overruled Stites & Harbison's objections to the magistrate judge's Report and Recommendation ("R&R") awarding attorneys' fees and costs to Plaintiffs "for their reasonable expenses incurred, including attorneys' fees and costs, for the filing of the Motion to Strike [DE 50], for their participation in the May 7, 2025, Telephonic Status Conference [DE 55], and for their March 27, 2025, correspondence with Defendants' counsel [DN 55-2]." [DE 67 at 1250].

On January 6, 2026, Plaintiffs applied for expenses, including attorneys' fees in the amount of $56,816.38. [DE 69]. The parties notified the Court that a settlement agreement had been reached on March 6, 2026, and this action was dismissed, except for the pending Fee Application. [DE 75].

## II. STANDARD

A reasonable fee award is "one that is adequately compensatory to attract competent counsel[,] yet which avoids producing a windfall for lawyers." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000). Courts ordinarily determine a reasonable fee award by using a "lodestar" calculation. The lodestar fee is determined "by multiplying the proven number of hours worked by a court-ascertained reasonable hourly rate." *Ellison v. Balinski*, 625 F.3d 953, 960 (6th Cir. 2010) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "Generally, a 'strong presumption' favors the prevailing lawyer's entitlement to [their] lodestar fee." *Adcock-Ladd*, 227 F.3d at 350 (citations omitted). Accordingly, deviations from the lodestar fee "are proper only in certain 'rare' and 'exceptional' cases" and must be supported by 'specific evidence' on the record." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) (quoting *Blum v. Stenson*, 465 U.S. 886, 898–901 (1984)).

In assessing the reasonableness of an hourly rate, a court "should initially assess the 'prevailing market rate in the relevant community,'" which is, "that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Adcock-Ladd*, 227 F.3d at 350 (internal citations omitted). A court may also consider the twelve *Johnson* factors in determining the lodestar fee or adjustments to it:

> (1) the time and labor required by a given case;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly;
> (4) the preclusion of employment by the attorney due to acceptance of the case;

(5) the customary fee;
(6) whether the fee is fixed or contingent;
(7) time limitations imposed by the client or the circumstances;
(8) the amount involved and the results obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) awards in similar cases.

*Reed v. Rhodes*, 179 F.3d 453, 471–72 n. 3 (6th Cir. 1999) (citing *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). One of the most important *Johnson* factors is the result achieved. *See Eckerhart*, 461 U.S. at 435–36; *see also Adcock-Ladd*, 227 F.3d at 349.

Ultimately, the Court "enjoys discretion under Rule 37 in deciding whether to award sanctions and in what amount." *See, e.g., Breitenstein v. Deters*, 2023 WL 6160618, at *5 (S.D. Ohio Sept. 20, 2023) (citing *Spizizen v. National City Corp.*, 516 Fed. App'x 426, 431 (6th Cir. 2013)).

## III. ANALYSIS

As the party applying for attorney's fees, Plaintiffs have the burden of showing they are entitled to such an award by documenting the appropriate time spent on the matter in addition to hourly rates. *Pogue v. Nw. Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 1520432, at *2 (W.D. Ky. Apr. 25, 2017).Here, Plaintiff requests a total of $56,816.38 in attorneys' fees. [DE 69 at 1277].

In response, Stites & Harbison asserts that Plaintiffs' requested award should be partially denied for two reasons. *First*, Stites & Harbison argues that the Court "should deny Plaintiff's motion to the extent it seeks compensation for tasks" other than those specified in the order sanctioning Stites & Harbison. [DE 72 at 1396]. *Second*, Stites & Harbison requests the Court "should reduce the excessive and unreasonable time Plaintiffs' counsel spent on those tasks." [*Id.*].

*A. Scope of Fee Application*

This Court awarded attorneys' fees and costs to Plaintiffs "for the filing of the Motion to Strike [DE 50], for [Plaintiffs'] participation in the May 7, 2025, Telephonic Status Conference [DE 55], and for their March 27, 2025, correspondence with Defendants' counsel [DN 55-2]." [DE 67 at 1250].

However, Stites & Harbison contends that Plaintiffs' Fee Application seeks other expenses, specifically

> additional fees 'through the Court's Order Accepting the Report and Recommendation, including their reasonable attorneys' fees and costs in connection with the 'Plaintiffs' Reply in Support of the Motion to Strike,' for 'Plaintiffs' Response to Stites & Harbison's Objections to the Report and Recommendation,' and for 'this Fee Application.'

[DE 72 at 1400]. In short, Stites & Harbison asserts that Plaintiffs are only entitled to recover expenses for the tasks enumerated in the Court's order accepting the R&R [DE 67].

As for the hours Plaintiffs expended responding to Stites & Harbison's Objections and in submitting this Fee Application, nothing in the Courts' order accepting the R&R provides for recovery of these expenses. In opposition, Plaintiffs claim that "[n]one of those briefs would be necessary if Stites & Harbison had simply turned over the documents the Court ordered it to produce back in January of 2025." [DE 73 at 1422]. However, as Stites & Harbison notes, "[t]he time for Plaintiffs to seek additional fees was within fourteen days of the magistrate judge's recommendation." [DE 72 at 1403]. If Plaintiffs intended to seek fees beyond what was specifically provided for in the R&R, they should have done so by objection.

Whether to award the expenses incurred in connection with Plaintiffs' Reply in Support of the Motion to Strike [59] is a more complicated issue. The fees and costs "for the filing of the Motion to Strike [DE 50]" arguably include the expenses from the resulting briefing. Indeed, the

purpose of the award was to compensate Plaintiffs for the reasonable expenses "caused by [Defendants'] failure" to comply with the magistrate's January 2025 Order compelling additional discovery. [DE 67 at 1249 (citing Fed. R. Civ. P. 37)]. However, the Court also upheld the magistrate judge's award of expenses for the May 7, 2025 Telephonic Status Conference, which the magistrate judge "conducted . . . to discuss Plaintiffs' Motion to Strike." [DE 55]. In other words, where the Court ordered additional expenses in connection with the Motion to Strike, it did so specifically. And Defendants were not entirely unsuccessful in opposing the Motion to Strike or, for that matter, in objecting to the magistrate judge's R&R. Much of the briefing addressed the appropriateness of dispositive sanctions, which neither the magistrate judge nor this Court found appropriate. Ultimately, this Court "[did] not find that Stites & Harbison[] . . . acted in bad faith" and was "satisfied that this [was] not a case of malfeasance." [DE 67 at 1248]. Limiting the award to only the Motion to Strike and not the reply briefing is therefore consistent with the plain language of the Court's Order and appropriately reflects the burden to Plaintiffs caused by Stites & Harbison's conduct.

Accordingly, the Court **DENIES** Plaintiffs' Fee Application to the extent it seeks expenses related to the Reply in Support of the Motion to Strike [59], responding to Stites & Harbison's Objections [DE 66], and submitting this Fee Application [DE 69].

*B. Reasonableness of Fee Application*

Having determined which tasks Plaintiffs are entitled to recover expenses for, the Court must determine the reasonableness of the requested expenses. Both parties agree that the Court should conduct a lodestar analysis when assessing Plaintiffs' Fee Application. This ordinarily requires the Court to determine a reasonable hourly rate before assessing how many attorney hours the moving party has documented. In this case, however, Stites & Harbison does not dispute that

Plaintiffs' counsel's hourly rates are reasonable. Moreover, Stites & Harbison does not object to the time spent by John Cox, Plaintiffs' lead counsel, through May 12, 2025. [DE 72 at 1405]. The time spent by John Cox during this period, "encompasses the three tasks contemplated by this Court's Order Adopting" [DE 67], "appears appropriate[,] and is not excessive." [DE 72 at 1405]. John Cox billed 5.5 hours between April 22, 2025, and May 12, 2025, at $400 an hour, totaling $2,200. As such, this amount is not at issue. [*Id.* (stating a $2,200 fee is reasonable)].

However, Stites & Harbison does challenge the approximately 137.8 hours billed by Matthew Cox at $370 per hour,[1] totaling $50,986, as well as the 4.0 hours billed by attorney Thomas, the 0.5 hours billed by attorney Spiegel, and the 3.3 hours billed by attorney John Cox after May 12, 2025. [*Id.* at 1405, 1408 (arguing the Court should not award fees for "any time spent by Peterson Thomas or Scott Spiegel and should include only a fraction of the excessive time spent by Matthew Cox")]. The Court need not determine whether the hours billed by attorneys Thomas, Spiegel, and John Cox were reasonable (other than the 5.5 hours Cox billed between April 22, 2025, and May 12, 2025), because Plaintiffs do not dispute Stites & Harbison's assertion that these entries were billed in connection with matters outside the scope the Court's Order Accepting. [*See, e.g., id.* ("Spiegel had a single, vague entry for .5 on December 23, 2025, for a 'conference' with Thomas and Matthew Cox apparently regarding this fee application.")]. As a result, the Court denies the Fee Application to the extent it seeks these expenses.

With respect to attorney Matthew Cox, Stites & Harbison argues that approximately 94 of the 137.8 hours claimed by Cox were billed for "tasks not contemplated by this Court's Order Adopting." [*Id.* at 1405]. Stites & Harbison calculates that only 43.9 hours of the hours billed by

[1] Stites & Harbison does not dispute the hourly rate for attorney Matthew Cox. [DE 72 at 1404 ("Stites & Harbison does not challenge the hourly rates charged by Plaintiffs' counsel, which are in step with attorneys of similar experience in the local market.")].

attorney Matthew Cox was "spent in connection with the motion to strike and reply, and the March 27, 2025, correspondence." [*Id.* at 1408; DE 72-1 (spreadsheet of "Time Entries Outside the Court Order Adopting")]. And additionally, Stites & Harbison argues that "the award sought by Plaintiffs is . . . unreasonable because the time spent by Plaintiffs' counsel[, Matthew Cox,] on those tasks was excessive," and should be reduced by "at least 25%." [DE 72 at 1407].

In response, Plaintiffs argue that "Plaintiffs' counsel provided detailed billing records, which show the Plaintiffs exercised billing judgment," and that the claimed time entries were not the result of "block-billing," "duplicative billing," or other practices that may allow for reductions in fees under other circumstances. [DE 73 at 1267 (collecting cases)].

Ultimately, the Court agrees a reduction is appropriate. After review of the billing records submitted in connection with Plaintiffs' Fee Application, [*see* DE 69-2 at 1294], the Court was only able to determine that attorney Matthew Cox expended approximately 22.8 hours in connection with the motion to strike, his participation in the May 7, 2025 Telephonic Status Conference, and Plaintiffs' counsel's March 27, 2025 correspondence with Defendants' counsel. The difference between the Court's calculation and Stites & Harbison's may be because the latter figure includes time spent in connection with the reply in support of the motion to strike, or because the descriptions in the time entries were not sufficiently clear. However, in light of Stites & Harbison's request for a 25% reduction and the already significant downward departure from Plaintiffs' claimed sum of 152.1 hours of billed time, the Court finds that Plaintiffs have proven attorney Matthew Cox expended 33 hours of billed time—or approximately 75% of the 43.9 hours calculated by Stites & Harbison, which Plaintiffs failed to dispute. [*See* DE 72 at 1407 (arguing a 25% reduction is appropriate due to "difficulty of adjusting" a substantial number of excessive

billing entries "to determine their reasonable hours" and citing *Sykes v. Anderson*, No. 05-71199, 2008 WL 4776837, at *3 (E.D. Mich. Oct. 31, 2008), *aff'd*, 419 F. App'x 615 (6th Cir. 2011))].

As a result, the lodestar fee for attorney Matthew Cox is calculated by multiplying 33 hours with his hourly rate of $370 per hour, which equals $12,210. Together with the fees for attorney John Cox, Plaintiffs are entitled to attorneys' fees in the amount of $14,410.

The *Johnson* factors further support the reasonableness of this fee award. Of relevance here, one of the most important *Johnson* factors is consideration of the results achieved by the party moving for attorneys' fees. *See Hensley*, 461 U.S. at 435–36; *see also Adcock-Ladd*, 227 F.3d at 349. In this case, Plaintiffs were only partially successful. Although Plaintiffs succeeded in compelling additional discovery from Defendants, most of the fees at issue were incurred in connection with Plaintiffs' request for dispositive sanctions, which the magistrate judge denied. At the time Plaintiffs moved for sanctions, Defendants had already remedied their non-disclosures. Considering Plaintiffs' partial success, the requested award of $56,816.38 is excessive.

Accordingly, Plaintiffs' Application for Attorneys' Fees and Costs in Connection with the Order Accepting Report and Recommendation [DE 69] is **GRANTED in part and DENIED in part**.

## IV. CONCLUSION

For the reasons explained, and the Court being otherwise sufficiently advised, it is **ORDERED** that:

(1) Plaintiff's Application for Attorneys' Fees and Costs in Connection with the Order Accepting Report and Recommendation [DE 69] is **GRANTED in part and DENIED in part**.

(2) Stites & Harbison is ordered to pay Plaintiffs a portion of its attorneys' fees in the amount of $14,410. Stites & Harbison shall pay those attorneys' fees within ninety (90) days of the entry of this order.

Rebecca Grady Jennings, District Judge
United States District Court

September 30, 2026

cc: counsel of record